**UNITED STATES of America**

v.

**Brian Patrick REGAN, Defendant.**

**No. CRIM.A. 01–405–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Sept. 18, 2002.

Randy Bellows, Esquire, Assistant United States Attorney, United States Attorney Office, Patricia Haynes, Esquire, Assistant United States Attorney, United States Attorney's Office, James Gillis, Esquire, Assistant United States Attorney, United States Attorney's Office, Alexandria, VA, for Plaintiff.

Nina J. Ginsberg, Esquire, DiMuro, Ginsberg & Mook, James C. Clark, Esquire, Land, Clark, Carroll, Mendleson & Blair, Jonathan Shapiro, Esquire, Law Office of Jonathan Shapiro, Joseph J. McCarthy, Esquire, Delaney, McCarthy & Colton, Alexandria, VA, for Defendant.

## MEMORANDUM OPINION

LEE, District Judge.

THIS MATTER is before the Court on Defendant's Motion to Dismiss the Government's Notice of Intent to Seek the Death Penalty. The primary issue presented in the instant Memorandum Opinion, as raised in grounds E and F of Defendant's Omnibus Motions, is whether the Federal Death Penalty Act ("the Act"), 18 U.S.C. §§ 3591–3598, is unconstitutional in light of the Supreme Court's rulings in *Ring v. Arizona,* —— U.S. ——, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Jones v. United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999).

The thrust of Defendant's argument is that *Ring, Apprendi,* and *Jones* mandate that any fact that must be found in order for Defendant to receive an increased punishment beyond that authorized by the jury verdict constitutes an element of a new greater substantive offense. Based on this proposition, Defendant maintains that the Act is unconstitutional because the statutory aggravating factors alleged in this case necessary for the imposition of

capital punishment are sentencing factors, not elements, under the Act. Flowing from the premise that the *Ring* trilogy requires that any factor increasing punishment is tantamount to an element of a new and greater substantive offense, Defendant raises a litany of secondary arguments attacking the notice and evidentiary standards addressing the aggravating factors set forth in the Act. At bottom, Defendant insists that the Court cannot remedy these infirmities without violating basic principles of separation of powers.

For the reasons stated, the Court holds that the Act is consistent with *Ring, Apprendi,* and *Jones.* While these cases recognize additional procedural due process rights, the Supreme Court did not mandate that a fact that must be found to increase punishment beyond that authorized by the jury verdict constitutes an actual element of a new substantive crime. All *Ring* stands for is that any factual determination necessary to impose the death penalty must be found by a jury beyond a reasonable doubt. Therefore, because the statutory aggravating factors under the Act are not elements of an aggravated capital offense, and because the Act clearly provides that such factors be determined by a jury beyond a reasonable doubt, the Act is constitutional.

Accordingly, Defendant's contentions concerning the Act's alleged infirmities with respect to its notice and evidentiary standards fail as well. The Government's inclusion of the statutory aggravating factors in the superseding indictment remedy rather than exacerbate the constitutional concerns under the Fifth Amendment. Moreover, the Act's relaxed rules with respect to the admissibility of evidence regarding aggravating and mitigating factors in the penalty phase of a capital case are consonant with the Eighth Amendment and the Due Process Clause. The Act's evidentiary standard follows long-established precedent requiring individualized consideration of the defendant and the crime in determining whether to impose the ultimate penalty. In sum, the Act is consistent with the procedural rights recognized in *Ring,* and Defendant's motion seeking to dismiss the death penalty notice in this regard is DENIED.

## I. BACKGROUND

### A. The Charges Against the Defendant.

On August 24, 2001, the Defendant was charged in a criminal complaint with attempted espionage against the United States of America in violation of 18 U.S.C. § 794. Defendant was subsequently indicted on the charge on October 23, 2001. The charges against Defendant in the original indictment basically alleged that Defendant abused his position in the intelligence community by attempting to sell top secret information to Iraq, Libya, and the People's Republic of China. Defendant served in the United States Air Force ("USAF") from August 1980 until August 31, 2000, retiring at the rank of Master Sergeant. During his tenure with the USAF, Defendant specialized in signals intelligence analysis. Specifically, from 1991 to 1994, Defendant worked at the Air Force Intelligence Support Group at the Pentagon targeting the communications systems of military adversaries of the United States and later as an Air Defense Analyst.

From July 1995 until August 31, 2000, Defendant was detailed to the headquarters of the National Reconnaissance Office ("NRO"). The NRO is responsible for building and operating the United States reconnaissance satellites. Defendant was assigned to the Signals Intelligence Applications Integration Office of the NRO, which is responsible for focusing signals intelligence support for tactically deployed

military units. After leaving the USAF in August 2000, Defendant became employed by TRW Incorporated ("TRW"). In that capacity, he served as a contract employee to the NRO. In July 2001, Defendant began his TRW assignment at the NRO.

The original indictment alleged that beginning in mid–1999 Defendant accessed Intelink while at the NRO to obtain classified intelligence information relating to the military preparedness of Iran, Iraq, Libya, and China. Intelink is the United States Intelligence Community's classified version of the Internet, and it can be accessed only by persons with appropriate security clearance. In August 2001, the indictment alleges that Defendant again accessed Intelink while working for TRW on his NRO assignment. During the month of August, Defendant allegedly accessed and viewed classified information relating to military facilities in Iraq, Iran, Libya, and China, as well as classified documents relating to current United States intelligence collection capabilities against those nations. The indictment alleges that Defendant was subsequently arrested at Dulles International Airport on August 23, 2001, en route to Europe. Defendant was apprehended with the addresses of the Chinese embassies in Bern, Switzerland, and Vienna, Austria, as well as the Iraqi embassy in Vienna and the Iraqi Interests Section in Paris, France.

On February 14, 2002, the Government filed a four-count superseding indictment against Defendant. The superseding indictment alleges three counts of Attempted Espionage under 18 U.S.C. § 794(a). The three counts charge Attempted Espionage with the intent to injure the United States and advantage Iraq (Count One), Libya (Count Two), and China (Count Three). The superseding indictment also charges a count of Gathering National Defense Information in violation of 18 U.S.C. § 793 (Count Four). Notably, the superseding indictment refers to the discovery of letters on Defendant's computer allegedly drafted by Defendant to high-ranking government officials of Iraq and Libya, including the countries' respective leaders, Saddam Hussein and Muammar Qadhafi. These letters offered to sell top secret information to Iraq and Libya, including information involving United States aircraft flying in the No–Fly Zone over Northern Iraq.

## B. The Death Penalty Notice.

On April 19, 2002, pursuant to 18 U.S.C. § 3593, the Government filed a Notice of Intent to Seek the Death Penalty ("Notice") in this case. The Notice alleges two statutory aggravating factors and twenty-four non-statutory aggravating factors, justifying the death penalty on Count One, Attempted Espionage with the intent to injure the United States and advantage Iraq, and Count Two, Attempted Espionage with the intent to injure the United States and advantage Libya. The two statutory aggravating factors set forth in the Notice are (a) that "[i]n the commission of the offense the defendant knowingly created a grave risk of substantial danger to the national security," and (b) that "[i]n the commission of the offense the defendant knowingly created a grave risk of death to another person." 18 U.S.C. § 3592(b)(2)-(3). In light of the Supreme Court's decision in *Ring,* the Government filed another superseding indictment on July 24, 2002, re-alleging Counts One through Four and including the two statutory factors set forth in the Notice.

## C. Defendant's Motion to Dismiss the Death Penalty Notice.

Defendant initially moved to dismiss the Notice on the grounds that the Act is unconstitutional because of the relaxed evidentiary standard provided during the sen-

tencing phase, and the Act's failure to prescribe that the statutory aggravating factors be submitted to a grand jury. On July 16, 2002, Defendant filed a supplemental memorandum in support of his motion to dismiss, contending that the Act is unconstitutional in light of *Ring.* As stated, the Government then filed a superseding indictment on July 24, 2002, re-alleging Counts One through Four. The superseding indictment also included a section entitled "Notice of Special Findings" that alleged the statutory aggravating factors listed above. The instant Memorandum Opinion is limited to Defendant's contentions attacking the Act on constitutional grounds and Defendant's subsequent *Ring* arguments.

## II. ANALYSIS

The primary issue presented in the instant Memorandum Opinion is whether, in light of *Jones, Apprendi,* and *Ring,* certain aspects of the Act must be deemed unconstitutional. As stated, Defendant's primary argument is that (a) *Jones, Apprendi,* and *Ring* mandate that any fact which must be found in order for Defendant to receive an increased punishment constitutes an element of a new greater substantive offense and (b) the Act cannot be read to accommodate this mandate. For the reasons stated, while *Jones, Apprendi,* and *Ring* recognize additional procedural due process rights, the Supreme Court did not mandate that facts that must be found in order to increase punishment constitute actual elements of new substantive crimes. Moreover, the Act is consistent with the newly recognized procedural rights.

### A. The Rule of *Jones, Apprendi,* and *Ring.*

In *Jones,* the Supreme Court considered whether the federal carjacking statute, 18 U.S.C. § 2119, defined three distinct offenses or a single crime with a choice of three maximum penalties, two of which were dependent on sentencing factors exempt from the requirements of charge and jury verdict. In addition to finding that "the fairest reading of § 2119" supported the former interpretation, *Jones* noted that such a finding avoided grave and doubtful constitutional questions. *Jones,* 526 U.S. at 239, 119 S.Ct. 1215. That is, if § 2119 were interpreted to define a single crime with additional possible penalties that could be based upon a finding of the existence of sentencing factors without the requirements of charge and trial by jury, "the statute would be open to constitutional doubt in light of a series of cases over the past quarter century, dealing with due process and the guarantee of trial by jury." *Id.* at 240, 119 S.Ct. 1215. Indeed, the *Jones* Court found that there are "required procedures for finding the facts that determine the maximum permissible punishment; these are the safeguards going to the formality of notice, the identity of the factfinder, and the burden of proof." *Id.* at 243 n. 6, 119 S.Ct. 1215. Specifically, the *Jones* Court held that "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Id.*

Subsequently, in *Apprendi,* the Court revisited the question of the required procedures for finding facts that determine the maximum permissible punishment with regard to a state statute and held that "[t]he Fourteenth Amendment commands the same answer." *Apprendi,* 530 U.S. at 476, 120 S.Ct. 2348. Specifically, the *Apprendi* Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond

a reasonable doubt." *Id.* at 490, 120 S.Ct. 2348.

Finally, and most recently, the Supreme Court again revisited the constitutionally mandated processes in findings of fact that increase maximum punishment in *Ring.* In *Ring,* the Supreme Court addressed the constitutionality of an Arizona statute, which prescribed that the trial judge was required to make factual determinations regarding the existence of aggravating factors that were essential for imposition of the death penalty. *Ring* acknowledged that "[t]he Arizona first-degree murder statute authorizes a maximum penalty of death only in a formal sense, for it explicitly cross-references the statutory provision requiring the finding of an aggravating circumstance before imposition of the death penalty." *Ring,* —— U.S. at ——, 122 S.Ct. at 2440 (internal citation omitted). The Court, therefore held that, "[b]ecause Arizona's enumerated aggravating factors operate as the functional equivalent of an element of a greater offense, the Sixth Amendment requires that they be found by a jury." *Id.* at 2443 (internal citation omitted).

In a case decided concurrently with *Ring,* the Supreme Court acknowledged a limitation to the holdings in *Jones, Apprendi,* and *Ring. See Harris v. United States,* —— U.S. ——, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002). Specifically, the Supreme Court determined in *Harris* that "[b]asing ... [an] increase in the defendant's *minimum* sentence on a judicial finding [of a statutory aggravating factor] ... does not evade the requirements of the Fifth and Sixth Amendments." *Id.* at 2420 (emphasis added). In such situations, "Congress simply took one factor that has always been considered by sentencing courts to bear on punishment and dictated the precise weight to be given that factor." *Id.* (internal quotation omitted). Thus, "[t]hat factor need not be alleged in the

indictment, submitted to the jury, or proved beyond a reasonable doubt." *Id.*

## B. Application of the Rule to the Act.

Defendant argues that

*Ring* is not simply a case about rules of criminal procedure. Rather, it addresses the fundamental criminal law question of whether a fact that increases the maximum punishment applicable to a crime actually creates a new and distinct crime, one which ... is a greater offense than the one covered by the jury verdict.

(Def. Supp. Mem. at 7 (internal quotation omitted).) Defendant contends that, as a result, "the government *cannot* redefine the elements of the offenses created by Congress ... by simply returning to the grand jury in an attempt to expand the scope of the indictment. Only Congress can create the greater offenses the prosecution here envisions." (*Id.* at 7.) Moreover, Defendant argues that the Act is unconstitutional in light of *Ring* because the Act does not clarify the necessary procedures regarding the indictment and the Act does not afford adequate evidentiary protections.

The Government disputes Defendant's contentions and insists that the superseding indictment filed on July 24, 2002, which includes the facts necessary to find the statutory aggravating factors, resolves any potential constitutional infirmities. Further, the Government argues that Defendant has read the holdings in *Jones, Apprendi,* and *Ring* too broadly.

### 1. *Jones, Apprendi,* and *Ring* do not mandate new greater substantive offenses.

Defendant's primary contention is that *Jones, Apprendi,* and *Ring* mandate that the aggravating factors, which must necessarily be found to exist before the

death penalty may be imposed, constitute elements of an aggravated offense. In other words, Defendant contends that the indictment must charge aggravated capital attempted espionage, a new offense that includes aggravating factors to support a possible death penalty verdict. If this were the mandate of the Supreme Court, many of the concerns raised by Defendant would present significant hurdles to a constitutionally permissible reading of the Act. Nothing in *Jones, Apprendi,* and *Ring,* however, suggests that the United States Supreme Court in *Ring* overturned the Act or the overall structure of capital sentencing. Defendant reads too much into the opinion.

Specifically, *Ring* held that Arizona's enumerated aggravating factors operate as "the *functional equivalent of an element* of a greater offense," but did not require that such factors become actual elements of a new substantive offense. *Ring,* —— U.S. at ——, 122 S.Ct. at 2443 (quoting *Apprendi,* 530 U.S. at 494 n. 19, 120 S.Ct. 2348) (emphasis added). Further, *Apprendi* stated that the "substantive basis for . . . [the] enhancement is thus not at issue; the *adequacy of . . . [the] procedure is.*" *Apprendi,* 530 U.S. at 475, 120 S.Ct. 2348 (emphasis added); *see also Cannon v. Mullin,* 297 F.3d 989, 994 (10th Cir.2002) (holding "that *Apprendi* announced a rule of criminal procedure forecloses . . . argument that *Ring* announced a substantive

rule"). Additionally, *Jones* stated that "[t]he constitutional safeguards that figure in our analysis concern *not the identity of the elements defining criminal liability* but only the required procedures for finding the facts that determine the maximum permissible punishment." *Jones,* 526 U.S. at 243 n. 6, 119 S.Ct. 1215 (emphasis added).[1]

The Supreme Court's discussion in *Ring* regarding the impact of the Eighth Amendment's restriction on a legislature's ability to define capital crimes further supports the narrow reading. *See Ring,* —— U.S. at —— —— ——, 122 S.Ct. at 2441–42. Specifically, *Ring* addressed the contention that the Eighth Amendment required the statutory aggravating factors to be determined by a judge, and not a jury. *Id.* at 2442. In rejecting that argument, the Court had the opportunity to question the validity of directing the fact-finding of an aggravating factor to be done during the penalty phase of the trial. However, the Court did not cast any doubt on the constitutionality of this well-established process. Thus, while the requisite channeling of sentencer discretion can occur in the guilt phase, *Lowenfield v. Phelps,* 484 U.S. 231, 244–45, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988) ("We see no reason why this narrowing function may not be performed by jury findings at either the sentencing phase of the trial or the guilt phase."),

---

1. Also, while Justice Thomas opines that "the core crime and the aggravating fact together constitute an aggravated crime, just as much as grand larceny is an aggravated form of petit larceny," *Apprendi,* 530 U.S. at 501, 120 S.Ct. 2348 (Thomas, J., concurring), the narrow holdings of *Jones, Apprendi,* and *Ring* do not require such a result. *See Ring,* —— U.S. at ——, 122 S.Ct. at 2443 (holding "[b]ecause Arizona's enumerated aggravating factors operate as the functional equivalent of an element of a greater offense, the Sixth Amendment requires that they be found by a jury") (internal citation omitted); *Apprendi,* 530 U.S.

at 490, 120 S.Ct. 2348 (holding "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt"); *Jones,* 526 U.S. at 243 n. 6, 119 S.Ct. 1215 (holding "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt").

*Ring* did not require necessarily that such determinations be a part of the jury verdict.[2] In sum, the narrow holding of *Ring* did not mandate that aggravating factors must become elements of a new greater substantive offense.

### 2. The Act is Constitutional.

 Review of the Act is governed by the settled rule that every legislative act is presumed to be a constitutional exercise of legislative power until the contrary is clearly established. *Reno v. Condon,* 528 U.S. 141, 148, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000) (citing *Close v. Glenwood Cemetery,* 107 U.S. 466, 475, 2 S.Ct. 267, 27 L.Ed. 408 (1883)). Because *Jones, Apprendi,* and *Ring* do not require the creation of aggravated capital attempted espionage resulting in death or other new greater substantive offenses, but merely require additional procedural protections in the determination of the existence of facts that may increase punishment, the potential constitutional complications raised by Defendant are avoided. Specifically, Defendant's challenges to the indictment and the evidentiary standard applied during the penalty phase fail.

#### a. The Indictment.

Although the issue is moot in light of the superseding indictment, the Government acknowledges that *Ring* did not answer whether the Indictment Clause of the Fifth Amendment requires the grand jury to indict aggravating factors for a defendant to be eligible for the death penalty. The *Ring* Court was considering a "tightly delineated" claim: whether "the Sixth Amendment required jury findings on the aggravating circumstances asserted against him." *Ring,* —— U.S. at —— n. 4, 122 S.Ct. at 2437 n. 4. Ring did "not contend that his indictment was constitutionally defective." *Id.*

 However, in light of *Jones's* requirement that "any fact ... that increases the maximum penalty for a crime must be charged in an indictment," it appears to be a foregone conclusion that aggravating factors that are essential to the imposition of the death penalty must appear in the indictment.[3] *Jones,* 526 U.S. at 243 n. 6, 119 S.Ct. 1215; *see also United States v. Promise,* 255 F.3d 150, 152 (4th Cir.2001) ("[W]e conclude that under *Apprendi,* in order to authorize the imposition of a sentence exceeding the maximum allowable without a jury finding of a specific [factor] ..., such [factors] ... must be treated as elements of aggravated ... offenses ..., *i.e.,* charged in the indictment and proved to the jury beyond a reasonable doubt."). Thus, in the instant action, it appears that the statutory aggravating factors appearing in 18 U.S.C. § 3592(b) are properly included in the superseding indictment.

 Nonetheless, Defendant argues that the superseding indictment does not remedy the infirmities of the Act. First, Defendant claims that the Act is unconsti-

---

**2.** *See, e.g., Ring,* —— U.S. at ——, 122 S.Ct. at 2445 (Scalia, J., concurring) ("What today's decision says is that the jury must find the existence of the *fact* that an aggravating factor existed. Those States that leave the ultimate life-or-death decision to the judge may continue to do so—*by requiring a prior jury finding of [an] aggravating factor in the sentencing phase* or, more simply, by placing the aggravating-factor determination (where it logically belongs anyway) in the guilt phase.") (emphasis added).

**3.** Additionally, the requirement that a defendant be at least 18 years of age, appearing in 18 U.S.C. § 3591(a), is a fact which must be found before the death penalty may be imposed. Thus, it appears a defendant must be afforded the same procedural protections in the determination of his age as the determination of the existence of the statutory aggravating factors. In the instant action, the assertion that Defendant is at least 18 years of age appears in the superseding indictment.

tutional because the death penalty notice requirement of § 3593(a) does not provide for a grand jury indictment on the statutory aggravating factors. However, "the mere fact that the statute is silent regarding whether sentencing factors must be treated as elements in order for those factors to increase the defendant's statutory maximum sentence does not make the statute inconsistent with the constitutional requirement that those factors receive that treatment." *United States v. McAllister,* 272 F.3d 228, 233 (4th Cir.2001). Moreover, although the Act provides for the aggravating factors to appear in the Notice, *see* 18 U.S.C. § 3593(a), this provision does not preclude the possibility of an indictment on the statutory aggravating factors.

Additionally, there is nothing unusual about the omission of a provision in the Act mandating that the statutory aggravating factors appear in the indictment. The sufficiency of an indictment is not articulated in the statute identifying the substantive crime but is provided for in Fed. R.Crim.P. 7(c).

Similarly, the form chosen by the Government in presenting these facts in the superseding indictment—the "Notice of Special Findings"—is permissible. Neither the Fifth Amendment nor Fed. R.Crim.P. 7 prohibits the presentation of such information in this manner. Although a defendant may strike surplusage from an indictment, *see* Fed.R.Crim.P. 7(d), the holdings of *Jones, Apprendi,* and *Ring* establish that the statutory aggravating factors are neither immaterial nor irrelevant to Defendant's punishment. *See, e.g., United States v. Poore,* 594 F.2d 39, 41 (4th Cir.1979) ("The purpose of Rule 7(d) is to protect a defendant against prejudicial allegations that are neither relevant nor material to the charges made in an indictment . . . ."). Thus, this contention is not well taken.

■ Defendant claims also that indictment by the grand jury as to the aggravating factors would leave unaddressed the question of which aggravating factors should be passed upon by the grand jury and included in the indictment: the statutory aggravating factors alone or both the statutory and the non-statutory aggravating factors. As addressed in *Apprendi,* "[t]he indictment must contain an allegation of every fact which is legally essential to the punishment to be inflicted." *Apprendi,* 530 U.S. at 490 n. 15, 120 S.Ct. 2348 (quoting *United States v. Reese,* 92 U.S. 214, 232–33, 23 L.Ed. 563 (1875)). In relevant part, the Act provides that a defendant found guilty of an offense described in 18 U.S.C. § 794 and who is at least 18 years of age "shall be sentenced to death if, after consideration of the factors set forth in . . . [18 U.S.C. § ] 3592 in the course of a hearing held pursuant to . . . [18 U.S.C. § ] 3593, it is determined that imposition of a sentence of death is justified." 18 U.S.C. § 3591(a). Section 3592 contains three relevant aggravating factors: (1) prior espionage or treason offense; (2) grave risk to national security; and (3) grave risk of death. Further, § 3592 provides that "[t]he jury, or if there is no jury, the court, may consider whether any other aggravating factor for which notice has been given exists." However, "[i]f no aggravating factor set forth in section 3592 is found to exist, the court shall impose a sentence other than death authorized by law." 18 U.S.C. § 3593(d). Therefore, because at least one of the statutory aggravating factors of § 3592(b) must be found before a defendant may be determined death penalty eligible, such facts are the functional equivalent of elements and must appear in the indictment.

■ The same does not hold true for non-statutory aggravating factors. To be sure, Defendant is correct in that the non-statutory aggravating factors play a crucial

role in the selection decision. *See, e.g., United States v. Friend,* 92 F.Supp.2d 534, 543 (E.D.Va.2000) ("[H]eightened reliability requires that the factor itself must play a proper role in selecting who should die from those eligible for a sentence of death.") However, at the selection stage, the jury has already determined that the defendant is eligible for death. The question before the jury in assessing the non-statutory aggravating factors is "whether a defendant eligible for the death penalty should in fact receive that sentence." *Tuilaepa v. California,* 512 U.S. 967, 972, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994). In other words, the Defendant could not be sentenced to death based solely upon the jurors' finding of non-statutory aggravating factors. Therefore, because a finding of non-statutory aggravating factors does not "increase[ ] the penalty for a crime beyond the prescribed statutory maximum," *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348, the Fifth Amendment is not implicated.[4]

■ Finally, Defendant raises a concern regarding whether he is to be called upon to plead to aggravating factors appearing in the indictment. As such factors are the functional equivalent of elements rather than actual elements of the offense, the factors are irrelevant to the plea of guilty or not guilty. Thus, Defendant need not enter a plea as to the aggravating factors appearing in the indictment.

#### b. Evidentiary Standard.

Defendant raises concerns regarding the evidentiary standard the Act applies to the penalty phase of the trial, asserting that § 3593(c) provides constitutionally insufficient protection against an evidentiary free-for-all. Currently, "[i]nformation is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3593(c). As neither *Jones, Apprendi,* nor *Ring* mandated that the Act's current evidentiary scheme be altered, and the limitations on evidence in the Act suffice to satisfy the Constitution, the rules of evidence set forth in § 3593(c) must continue to apply to all aggravating and mitigating factors.

■ The narrow holdings of *Jones, Apprendi,* and *Ring* do not require that the Federal Rules of Evidence be imposed on the penalty phase. Moreover, regardless of whether the statutory aggravating factors are substantive elements, or merely the functional equivalent of elements, the Federal Rules of Evidence are not constitutionally mandated. The Supreme Court has recognized that, "subject to the requirements of due process, 'Congress has power to prescribe what evidence is to be received in the courts of the United States.'" *United States v. Brainer,* 691 F.2d 691, 695 n. 7 (4th Cir.1982) (quoting *Tot v. United States,* 319 U.S. 463, 467, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943)). As such, "[t]he question is whether, in this instance, the Act transgresses those limits." *United States v. De Lutro,* 309 F.Supp. 462, 467 (S.D.N.Y.1970).

Insofar as Defendant argues that the standard appearing in the Act will result in

---

4. Moreover, the same holds true for mitigating factors: "If the defendant can escape the statutory maximum by showing, for example, that he is a war veteran, then a judge that finds the fact of veteran status is neither exposing the defendant to a deprivation of liberty greater than that authorized by the verdict according to statute, nor is the judge imposing upon the defendant a greater stigma than that accompanying the jury verdict alone." *Apprendi,* 530 U.S. at 490 n. 16, 120 S.Ct. 2348. Thus, mitigating factors need not appear in the indictment.

an impermissible evidentiary free-for-all in violation of the Fifth Amendment Due Process Clause and the heightened reliability requirements of the Eighth Amendment, his claim is infirm. The standard articulated in § 3593(c) is consistent with Supreme Court precedent regarding relaxed standards governing admissibility of evidence at capital sentencing hearings. With regard to the Eighth Amendment, "it [is] desirable for the jury to have as much information before it as possible when it makes the sentencing decision." *Gregg v. Georgia*, 428 U.S. 153, 204, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)(joint opinion of Stewart, Powell, and Stevens, JJ.); *see also Woodson v. North Carolina*, 428 U.S. 280, 304, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976)(plurality opinion) ("[I]n capital cases the fundamental respect for humanity underlying the Eighth Amendment ... requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death."); *Jurek v. Texas*, 428 U.S. 262, 276, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976) (White, J., concurring in judgment) ("What is essential is that the jury have before it all possible relevant information about the individual defendant whose fate it must determine."). Similarly, "[t]he due-process clause should not be treated as a device for freezing the evidential procedure of sentencing in the mold of trial procedure." *Williams v. New York*, 337 U.S. 241, 251, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). "Highly relevant—if not essential—to ... [the sentencer's] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." *Id.* at 247, 69 S.Ct. 1079. Indeed, "the [Supreme] Court's death penalty jurisprudence explicitly directs that the normal rules of evidence should not be applied at the penalty phase, but should be replaced by the *Gregg* standard—*i.e.*, evidence may be introduced and arguments may be made so long as they do not prejudice a defendant." *United States v. Frank*, 8 F.Supp.2d 253, 269 (S.D.N.Y.1998) (internal quotation omitted).

Section 3593(c) not only satisfies the *Gregg* standard, "[t]he relevancy standard enunciated in § 3593(c) actually excludes a greater amount of prejudicial information than the Federal Rules of Evidence because it permits the judge to exclude information where the 'probative value is outweighed by the danger of creating unfair prejudice' rather than 'substantially outweighed.'" *United States v. Jones*, 132 F.3d 232, 241 n. 7 (5th Cir.1998), *aff'd sub nom. Jones v. United States*, 527 U.S. 373, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999) (citing Fed.R.Evid. 403). This standard, "[c]oupled with the constitutionally requisite heightened reliability required at capital sentencing ... sufficiently permits and requires the Court to ensure the reliability of the information offered at sentencing." *United States v. Walker*, 910 F.Supp. 837, 853 (N.D.N.Y.1995) (analyzing the standard prescribed by 21 U.S.C. § 848(j)—a standard that notably is more relaxed than that appearing in § 3593(c)). Thus,

> [a]lthough the sentencing hearing will not be governed by traditional evidentiary restraints, the district court will prevent the evidentiary free-for-all prophesied by [Defendant] ... by excluding unfairly prejudicial information under the standard enunciated in § 3593(c). Consequently, the relaxed evidentiary standard does not impair the reliability or relevance of information at capital sentencing hearings, but helps to accomplish the individualized sentencing required by the constitution.

*Jones*, 132 F.3d at 242.

Moreover, any Sixth Amendment Confrontation Clause concerns are alleviated.

The basic purpose of the Confrontation Clause is "the promotion of the integrity of the factfinding process." *White v. Illinois,* 502 U.S. 346, 356–57, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992) (internal quotation omitted). Assuming that the Confrontation Clause applies to the determination of the statutory aggravating factors in the penalty phase, the Court can ensure that the reliability requirements of the clause are considered within the scope of § 3593(c). Specifically, "where proffered hearsay has sufficient guarantees of reliability to come within a firmly rooted exception to the hearsay rule, the Confrontation Clause is satisfied," *id.* at 356, 112 S.Ct. 736, and the evidence may be deemed sufficiently probative to be admitted under § 3593(c). Whereas, if such evidence does not fall within such a firmly rooted exception, the evidence may be deemed too prejudicial to be admitted under § 3593(c). Thus, § 3593(c) can absorb the requirements of the Confrontation Clause and is constitutional in this regard.

### III. CONCLUSION

For the reasons stated, the Act remains constitutional in light of the Supreme Court's rulings in *Jones, Apprendi,* and *Ring.* Accordingly, it is hereby

ORDERED that Defendant's Motion to Dismiss the Government's Notice of Intent to Seek the Death Penalty, insofar as it is based on the contentions raised in grounds E and F of the Omnibus Motions and Defendant's Supplemental Memorandum filed on July 16, 2002, is DENIED. An appropriate Order will issue.

The Clerk is directed to forward a copy of the Memorandum Opinion to counsel.