Gary PLOOF, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Nos. 420,2003, 464,2003.

Supreme Court of Delaware.

Submitted: May 25, 2004.
Decided: Aug. 11, 2004.

**540**

Bernard J. O'Donnell, Sandra Dean (argued), and Sheryl Rush–Milstead, Office of the Public Defender, Wilmington, Delaware. Attorney for Appellant.

Kim E. Ayvazian, John Williams (argued), Robert J. O'Neill, Jr., and Marie O'Connor Graham, Department of Justice, Dover, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and HARTNETT,* constituting the court en banc.

STEELE, Chief Justice.

A jury convicted Gary Ploof of Murder in the First Degree for killing his wife and a Superior Court judge sentenced him to death. Ploof raises five arguments in this direct appeal. His most compelling argument, one of first impression in Delaware, involves claims of procedural and substantive constitutional defects in Delaware's sentencing scheme resulting from the trial judge's refusal to bifurcate Ploof's penalty hearing. After carefully reviewing Ploof's contentions, we find no constitutional deficiency in Delaware's sentencing framework, no abuse of discretion or legal error by the trial judge, and no disproportionality in Ploof's sentence. The judgment of the Superior Court is affirmed.

*Facts*

Gary W. Ploof was a U.S. Air Force Staff Sergeant stationed with his wife, Heidi, at Dover Air Force Base during 2001. Beginning that year, Ploof had an affair with Adrienne Hendricks, a colleague with whom he worked part-time at a towing service. Ploof learned that effective November 1, 2001, the U.S. Air Force would provide $100,000 life insurance for military spouses. He was informed that he would be automatically enrolled unless he took affirmative action to disenroll. Ploof told his supervisor of his intent to refuse the policy coverage, but he took no action to do so. Ploof also told Hendricks that she should plan to move in with him starting November 5, 2001 because he and Heidi were having marital problems, and Heidi was preparing to move out.

In truth, Heidi was not planning to move out nor did Ploof have any intention of rejecting the spousal U.S.A.F. life insurance coverage. Instead, Ploof intended to murder his wife soon after the life insurance policy became effective on November 1. On November 3, 2001, Ploof drove with Heidi to the parking lot of the Dover Wal–Mart where he shot her in the head with a .357 magnum revolver. He did that in a way that (he believed) would suggest that she committed suicide. He also developed a scheme to mislead the police in the event that a homicide investigation ensued. Security videotape of the Wal–Mart parking lot on the day that Heidi's body was found showed Ploof hurriedly walking away from her vehicle. Ploof also constructed an elaborate alibi by making numerous frantic phone calls feigning his concern for his

* Sitting by designation pursuant to Del. Const. Art. IV § 38.

missing wife. One of the calls prompted a friend to search for Heidi on the dark country roads on which she would have driven home from work. Ploof even called Heidi's cell phone in an attempt to deflect suspicion of his involvement. He then hid the murder weapon on his property and asked friends to hold on to another pistol and a gun case so that they would not be found by the police. Finally, he lied to police about his mistress, Hendricks, (suggesting that she was just a friend), about his weapons (maintaining that he owned no pistols), and about a life insurance policy in which Heidi was recently enrolled (insisting that he had no knowledge of the policy).

## Procedural History

On June 16, 2003, a Superior Court jury convicted Ploof of Murder in the First Degree,[1] and Possession of a Firearm During Commission of a Felony.[2] Pursuant to 11 *Del. C.* § 4209(c) the trial judge directed the parties to give notice of the aggravating and mitigating circumstances they would present at a penalty hearing for Murder in the First Degree. On June 16, 2003, the State gave notice of its intent to rely on two statutory aggravating circumstances: that "the murder was committed for pecuniary gain" and that "the murder was premeditated and the result of substantial planning."[3]

Pursuant to 11 *Del. C.* § 4209(b), the penalty hearing began before an advisory jury on June 18, 2003 and concluded the following day with Ploof's allocution. The trial judge instructed the jurors on the law and gave them a Penalty Phase Interrogatory Form. The jury unanimously found that the evidence showed beyond a reasonable doubt that the murder was committed for pecuniary gain. By a vote of 11 to 1, a majority of the jury found beyond a reasonable doubt that the murder was premeditated and the result of substantial planning. After weighing all relevant evidence in aggravation or mitigation which bore upon the particular circumstances or details of the commission of the offense and the character and propensities of the offender, the jury unanimously found by a preponderance of the evidence, that all the relevant evidence of aggravation outweighed all the relevant evidence in mitigation. The trial judge reviewed the recommendation and sentenced Ploof to death.

Ploof raises five arguments on appeal: (1) the trial judge abused his discretion by refusing to suppress evidence tainted by a *Miranda*[4] violation; (2) during jury *voir dire*, the trial judge erroneously allowed two peremptory challenges violative of *Batson v. Kentucky*;[5] (3) the prosecutor's reference to Ploof's "public defender" prejudiced him because it promoted an inference that Ploof lacked financial resources; (4) the trial judge erroneously denied Ploof's motion to bifurcate the sentencing hearing; and, (5) his death sentence is disproportionate to sentences imposed in similar cases.

We review de novo first, the trial judge's denial of Ploof's motion to bifurcate the sentencing phase of his trial because that issue is one of first impression for this Court.[6] We then address Ploof's remaining arguments.

1. 11 *Del. C.* § 636.

2. 11 *Del. C.* § 1447A.

3. 11 *Del. C.* § 4209(e)(1)(o) and (u).

4. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

5. 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

6. See *Capano v. State*, 781 A.2d 556, 607 (Del.2001); *Seward v. State*, 723 A.2d 365, 375 (Del.1999); *Baxter v. State*, 2002 WL 27435, at *1, 2002 Del. LEXIS 1, at *2.

### Ploof's Bifurcation Argument

Ploof argues that permitting the prosecution to introduce all evidence in aggravation, including evidence that would not be admissible at trial, before the jury determining the existence of a statutory aggravating factor, violates basic principles of fairness. Specifically, he contends that presenting extensive bad character evidence in the narrowing phase of the penalty hearing prejudiced him, by diverting the jury from fairly focusing their decision on the facts supporting or negating the statutory aggravating factors of pecuniary gain and prior planning. Ploof argues that both federal and state substantive and procedural due process standards require a bifurcated hearing upon request. He cites no federal or Delaware law supporting his position nor does he cite any other state decisions that are *not dependent upon* that state's statutory framework.

### Maryland's Sentencing Framework

While Delaware has not specifically addressed Ploof's argument in the context of our statutory sentencing scheme, Maryland, with a similar statutory framework, has addressed these arguments extensively. The Maryland Court of Appeals has consistently held that not only is it *not error* to refuse a request for a bifurcated penalty hearing, but also that the trial judge does not even have discretion to grant one, because MD Code § 2–303 expressly mandates a *unitary* sentencing hearing.[7] Further, the Fourth Circuit has upheld the Maryland Court of Appeals' determination that the Eighth Amendment of the United States Constitution does not require an internally bifurcated sentencing hearing.[8]

Maryland Rule 4–343 outlines the procedures that govern a separate penalty proceeding whenever the State has filed a proper notice of intent to seek the death penalty. The Rule requires a jury to complete a Findings and Sentencing Determination Form (similar to Delaware's Penalty Phase Interrogatory Form) during its deliberations. The jury must first determine whether the defendant was "a principal" in the first degree.[9] If a defendant is not found to be a first degree principal, then he or she cannot be sentenced to death.[10] Defendants in Maryland have repeatedly challenged the sentencing procedure by arguing that principalship should be determined before any evidence of aggravating and mitigating factors is heard.

7. *See, e.g., Bruce v. State,* 328 Md. 594, 616 A.2d 392, 399–400 (1992).

8. *Grandison v. Corcoran,* 225 F.3d 654, 2000 WL 1012953, *14 (4th Cir. July 24, 2000) (unpublished) (Grandison's tenth claim regarding the state proceedings is that the Maryland death penalty statute is unconstitutional because it does not mandate a sentencing proceeding in which a jury's finding of an aggravating circumstance be bifurcated from the rest of the hearing. Grandison contends that, according to *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), the Eighth Amendment requires such a bifurcation. *In Gregg,* the Supreme Court expressed a preference for bifurcation of a capital defendant's sentencing hearing from the guilt/innocence trial. See 428 U.S. at 190–91, 96 S.Ct. 2909. *Gregg* does not, however, hold that the Eighth Amendment requires an internal bifurcation of the sentencing proceedings. Thus, the decision of the Maryland Court of Appeals rejecting this claim, see *Grandison III,* 670 A.2d at 424, was not contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court).

9. Maryland Rule 4–343(e), "FINDINGS AND SENTENCING DETERMINATION" form, Section I, Question 1.

10. Two other possible answers to Section I, Question 1 can preclude death eligibility, but they are not relevant to our discussion here.

In *State v. Colvin*,[11] the court reasoned that the principalship was to be determined at the penalty phase, rather than at the guilt phase, so that a defendant is not forced to admit participating in a murder in an attempt to avoid the death penalty, by testifying that another defendant was the principal.[12] In *Wiggins v. State*,[13] the Maryland Court of Appeals held:

> According to the State, nothing in the capital sentencing statute, Art. 27, § 413(a),[14] requires a separate sentencing proceeding to determine the punishment, nor is it required by the statute or the federal constitution that any component part of the sentencing determination be determined in a separate proceeding.... Nothing in the rule, however, mandates a bifurcated hearing and we perceive no error in the trial court's refusal to order bifurcation. [citations omitted] But even assuming, *arguendo*, the existence of inherent discretion in the trial court to bifurcate the proceeding, no abuse of discretion would have resulted from the denial of the bifurcation request.[15]

Elaborating on *Wiggins*, the Maryland Court of Appeals in *Booth v. State*,[16] held that, "[t]he trial judge did not have discretion to bifurcate the sentencing proceeding in order to separate out the principalship issue. Rule 4–343, and the sentencing form it incorporates, are binding. The rule makes clear that principalship and the other sentencing-related issues are resolved in a unitary sentencing proceeding."[17]

### Illinois' Sentencing Framework

Illinois has, in at least one instance, addressed the potential prejudicial effect of otherwise inadmissible evidence of non-statutory aggravating and mitigating factors upon a jury focused primarily on determining the existence of a statutory aggravating factor. The applicable Illinois criminal statute states:

> During the [sentencing] proceeding any information relevant to any of the factors set forth in subsection (b) [the aggravating factors] may be presented by either the State or the defendant under the rules governing the admission of evidence at criminal trials. Any information relevant to any additional aggravating factors or any mitigating factors indicated in subsection (c) may be presented by the State or defendant regardless of its admissibility under the rules governing the admission of evidence at criminal trials. The State and the defendant shall be given fair opportunity to rebut any information received at the hearing.[18]

In *People v. Davis*,[19] the Supreme Court of Illinois vacated a death sentence, holding that the introduction of otherwise inadmissible evidence regarding a victim's family tainted the first phase of the bifurcated sentencing hearing, during which the jury must focus only upon trial-admissible evidence to determine whether there is proof beyond a reasonable doubt of a statutory

---

11. 314 Md. 1, 548 A.2d 506 (1988).

12. *Id.* at 514 n. 5.

13. 324 Md. 551, 597 A.2d 1359 (1991).

14. Recodified as MD Code, Criminal Law, § 2–303 (2003).

15. *Wiggins*, 597 A.2d 1359, 1372.

16. 327 Md. 142, 608 A.2d 162 (1992).

17. *Booth*, 608 A.2d at 170–71.

18. 720 Ill. Comp. Stat. 5/9–1 (2003).

19. 97 Ill.2d 1, 72 Ill.Dec. 272, 452 N.E.2d 525, 538 (1983).

aggravating factor. The court stated, "Here, in particular, it is essential that the jury's determination be based upon competent evidence, uninfluenced by the prejudice and passion potentially evoked by evidence of this nature." [20]

### The Death Penalty and Federal Due Process Requirements

Although the federal courts have not specifically reviewed Delaware's post-*Ring* hybrid sentencing framework for due process compliance, in our view the similarity of that framework to 18 *U.S.C.S.* § 3951, et seq. provides ample support for its constitutionality. [21] In *United States v. Fell,* [22]

the Second Circuit vacated and remanded a District Court determination that § 3953(c) of the Federal Death Penalty Act (FDPA) was unconstitutional because it permitted the admission of evidence during the penalty phase of a capital trial that would not be admissible under the Federal Rules of Evidence. [23] The District Court had ruled that § 3953(c) was unconstitutional under the Supreme Court's decisions in *Ring v. Arizona,* [24] *Apprendi v. New Jersey,* [25] and *Jones v. United States,* [26] because it directed the court to "ignore the rules of evidence when considering information relevant to death penalty eligibility [which] is a violation of the Due Process Clause of the *Fifth Amend-*

20. *Davis,* 72 Ill.Dec. 272, 452 N.E.2d at 538. In contrast, the same court, in *People v. Albanese,* found no error in a unitary sentencing hearing conducted by a judge where the nature of the statutory aggravating factor (multiple murder convictions) was such that there was no doubt about the defendant's eligibility for death. *People v. Albanese,* 104 Ill.2d 504, 85 Ill.Dec. 441, 473 N.E.2d 1246, 1261–62 (1984).

21. Under the Federal Death Penalty Act of 1994, *18 U.S.C.S. § 3591* et seq., if a defendant is convicted of a federal offense that carries the potential of a death sentence, the defendant is entitled to a separate sentencing hearing to determine the punishment to be imposed. *18 U.S.C.S. § 3593* (b). During this separate hearing, referred to as the sentencing or penalty phase, the jury first considers whether the government has sustained its burden of proving the existence of one or more statutorily defined aggravating factors beyond a reasonable doubt. *18 U.S.C.S. § 3593* (c). A finding that an aggravating factor exists must be unanimous. *18 U.S.C.S. § 3593* (d). If the jury finds that the government has not sustained its burden of demonstrating the existence of at least one statutory aggravating factor, the death penalty may not be imposed. If, however, the jury finds that the government has sustained its burden, the jury must next consider whether (1) all the aggravating factors found to exist sufficiently outweigh all the mitigating factors found to exist to justify a sentence of death; or, (2) in the absence of a mitigating factor, whether

the aggravating factor or factors alone are sufficient to justify a sentence of death. *18 U.S.C.S. § 3593* (e).

22. 360 F.3d 135 (2d Cir.,2004).

23. *Id.* at 146 ( "Accordingly, we agree with the numerous courts that have held that the FDPA Standard set forth in *§ 3593(c)* meets constitutional requirements." See, e.g., *United States v. Haynes,* 269 F.Supp.2d 970, 983–87 (W.D.Tenn.2003); *United States v. Davis,* 2003 WL 1873088, at *4, 2003 U.S. Dist. LEXIS 6009, at *11 (E.D. La. April 10, 2003); *United States v. Battle,* 264 F.Supp.2d 1088, 1106 (N.D.Ga.2003); *United States v. Johnson,* 239 F.Supp.2d 924, 946 (N.D.Iowa 2003); *United States v. Regan,* 221 F.Supp.2d 672, 681–83 (E.D.Va.2002); *United States v. Minerd,* 176 F.Supp.2d 424, 435–36 (W.D.Pa. 2001); *United States v. Cooper,* 91 F.Supp.2d 90, 98 (D.D.C.2000); *United States v. Frank,* 8 F.Supp.2d 253, 267–71 (S.D.N.Y.1998); *United States v. Nguyen,* 928 F.Supp. 1525, 1546–47 (D.Kan.1996); *United States v. McVeigh,* 944 F.Supp. 1478, 1487 (D.Colo.1996)).

24. 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).

25. 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

26. 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999).

*ment...* "[27] In its reversing opinion, the Second Circuit found that the FDPA actually promoted the *heightened reliability* required for the imposition of the death penalty because it allowed more evidence on the presence or absence of mitigating factors.[28] The appellate court also concluded that the balancing test prescribed by § 3593(c) ensured that defendant would receive a fundamentally fair trial and that the district court had erred by equating the Federal Rules of Evidence with the defendant's Constitutional rights.[29]

In *Godfrey v. Georgia*,[30] the United States Supreme Court, outlined three criteria for determining whether a statutory sentencing scheme effectively "channels" the discretion of the sentencer. The *Godfrey* court held that a State that wishes to authorize capital punishment must undertake the responsibility to tailor and apply its capital punishment laws in a manner that avoids the arbitrary and capricious imposition of the death penalty.[31] An unconstitutionally vague death penalty scheme would fail to adequately channel a jury's decision and would result in arbitrary and capricious sentencing patterns.[32] Accordingly, the court held, a sentencing scheme must have: (1) "clear and objective standards;"[33] (2) that provide "specific and detailed guidance;"[34] and (3) "make rationally reviewable the process for imposing a sentence of death."[35]

## Delaware's Sentencing Framework

■ This Court has previously reviewed the Delaware General Assembly's post-*Ring* amendment to out death penalty statute, which was applicable at Ploof's 2003 jury trial, and found no Constitutional defect.[36] The jury instructions at Ploof's trial specifically set forth the law to be applied and the procedures to be followed by the jury panel. First, the trial judge instructed the jurors that:

> The law goes on to state as follows: A sentence of death shall not be imposed unless the jury, if a jury is impaneled, *first* finds unanimously and beyond a reasonable doubt the existence of at least 1 statutory aggravating circumstance as enumerated in subsection (e) of this section.

> *If* a jury has been impaneled *and if* the existence of at least 1 statutory aggravating circumstance as enumerated in subsection (e) of this section has been found beyond a reasonable doubt by the jury, the Court, after considering...

The trial judge then reminded the panel generally of their solemn responsibility as shepherds of law and fact, and as the conscience of the community. The trial judge next specifically instructed the jury about the two statutory aggravating factors that the State had attempted to prove, and explained the standard of proof and the requirement that there be a unanimous

27. *United States v. Fell*, 217 F.Supp.2d 469, 473 (D.Vt.2002) (vacated and remanded).

28. *Fell*, 360 F.3d at 145.

29. *Id.* at 144

30. 446 U.S. 420, 428, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980).

31. *Id.* at 428, 100 S.Ct. 1759.

32. *Id.* citing *Gregg v. Georgia*, 428 U.S. 153, 195, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)

33. *Gregg*, 428 U.S. at 198, 96 S.Ct. 2909 quoting *Coley v. State*, 231 Ga. 829, 204 S.E.2d 612, 615 (1974).

34. *Proffitt v. Florida*, 428 U.S. 242, 253, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).

35. *Woodson v. North Carolina*, 428 U.S. 280, 303, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976).

36. *Brice v. State*, 815 A.2d 314 (Del.2003).

finding. The trial judge then reiterated the importance of the initial statutory finding:

> After you consider whether the evidence shows beyond a reasonable doubt that one or more of the alleged statutory aggravating circumstances exists, you must also weigh and consider the mitigating and aggravating circumstances...

Despite the differences in the Delaware and Maryland capital murder statutes, the statutory aggravating factor requirement in Delaware and the principalship requirement in Maryland are analogous in that both are threshold issues for death penalty eligibility. Both state's guidelines are similarly written and both statutes deem admissible "any" relevant evidence at a unitary sentencing hearing.[37] Additionally, jurors in both states must consider all evidence of aggravating and mitigating factors before making a final sentencing recommendation.

Because we find our sentencing framework to be akin to Maryland's, certain teachings of Maryland's highest court on the issue of bifurcation are, therefore, relevant and persuasive. We further find that the Second Circuit's recent decision in Fell, combined with Gregg, Godfrey and their progeny, circumscribe Delaware's penalty phase procedures in a manner that inspires confidence that Delaware's statutory framework and its application in this specific case, will withstand constitutional due process scrutiny. Delaware's framework is the product of careful draftsmanship, and it has been applied in a consistent manner by Delaware judges and juries. By its very nature, Delaware's scheme requires meaningful consideration at two levels before the death penalty can be imposed. First, there must be a non-binding jury recommendation resulting from a unitary penalty hearing. Second, there must be a final, judicially-imposed sentence imposed after a judge has weighed all aggravating and mitigating factors presented at the hearing. Accordingly, Delaware's sentencing framework encompasses the elements of federal due process.[38]

Turning to the matter sub judice, because a bifurcated penalty hearing is required neither by federal or Delaware constitutionally prescribed due process, nor by Delaware statute, we find no error in the trial judge's denial of the motion to bifurcate Ploof's sentencing hearing. We note, however, that although the broad language chosen by the General Assembly in § 4209 does not explicitly permit a bifurcated hearing, at the same time it does not forbid that practice either. On the facts of this case, we are not called upon to determine, and therefore do not decide, whether or under what circumstances, a trial judge may appropriately exercise his or her inherent judicial discretion by ordering, either sua sponte or upon motion, a bifurcated penalty hearing.

### The Remaining Issues on Appeal

■ We find no merit in Ploof's remaining four arguments. First, the trial judge

---

37. In Delaware, 11 Del. § 4209(c)(1) reads, "At the hearing, evidence may be presented as to any matter that the Court deems relevant and admissible to the penalty to be imposed." Maryland Code § 2–303(e)(1) lists evidence admissible in a sentencing proceeding—relating to aggravating and mitigating circumstances, prior convictions, pre-sentence investigation reports with recommendations, and the catchall phrase, in (e)(1)(v), "any other evidence the courts finds to have probative value and relevance to sentencing, if the defendant has a fair opportunity to rebut any statement."

38. We do not dilate on the tenets of state substantive and procedural due process, because on the facts of this case our analysis of federal substantive and procedural due process yields the same result.

acted appropriately within his discretion by refusing to suppress evidence allegedly tainted by a *Miranda*[39] violation. In the videotape of Ploof's statement to the police he responded, "I'll help you out as much as I can," to the police officer reading him his *Miranda* rights. That was a clear and unequivocal waiver by Ploof of his right to remain silent. His statement was not ambiguous and, therefore, the police were not required to seek further clarification of his intent before proceeding to question him. Moreover, the trial judge based his ruling upon sufficient evidence.

■ Second, Ploof contends that the trial judge erroneously allowed two race-based peremptory challenges by the State. In fact, the two stricken jury panel members had indicated their reservations about imposing the death penalty. The State was justified, under these circumstances, in utilizing the two peremptory challenges because the prosecutor's explanation was race-neutral and did not implicate *Batson v. Kentucky.*[40]

■ Third, Ploof contends that the trial judge erred by denying his motion for a mistrial. He argues that the prosecutor's reference to his representation by a "public defender" unfairly prejudiced him by enhancing the inference that he lacked financial resources. Applying the three-part test of *Hughes v. State,*[41] we find that the trial judge acted appropriately within his discretion in denying the mistrial application, because the reference did not prej-

udicially affect Ploof's substantial rights. Ample evidence presented by the State, combined with Ploof's remarkably improbable explanation for how the homicide occurred, convinces us that this was not a close case. While the public defender reference does implicate a central issue in the case, namely Ploof's pecuniary resources, the reference was merely cumulative. Substantial earlier trial testimony established Ploof's financial difficulties both before and at the time of the murder. Finally, by promptly striking the comment and instructing the jury to disregard the reference, the trial judge took adequate steps to mitigate any potential prejudice that may have been caused.

■ Lastly, Ploof argues that his death sentence is disproportionate when compared to the life sentences imposed in *Virdin v. State,*[42] and *Taylor v. State.*[43] Although those two cases also involved defendants who killed a wife and girlfriend, respectively, neither involved murder for pecuniary gain. Here, Ploof committed a senseless, unprovoked, execution-style killing of a defenseless individual, for pecuniary gain. These are circumstances "...for which the death penalty has often been imposed in Delaware."[44] We find that the trial judge's decision was neither arbitrary nor capricious; rather, it was the product of a "deliberate, rational and logical deductive process."[45] Accordingly, the

**39.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**40.** 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

**41.** *Hughes v. State,* 437 A.2d 559, 571 (Del. 1981) (evaluating whether prosecutorial misconduct warrants a mistrial using three factors—closeness of the case, centrality of the issue affected by the alleged error, and steps taken to mitigate the error).

**42.** 780 A.2d 1024 (Del.2001).

**43.** 685 A.2d 349 (Del.1996).

**44.** *Zebroski v. State,* 715 A.2d 75, 84–85 (Del. 1998) *See also Swan v. State,* 820 A.2d 342 (Del.2003).

**45.** *Red Dog v. State,* 616 A.2d 298, 310 (Del. 1992).

sentence of death under these circumstances was not disproportionate.

### Conclusion

For the foregoing reasons the judgment and sentence of the Superior Court are hereby AFFIRMED.