# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| BIRCH STRATEGIC CAPITAL, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2025-0660-MTZ |
| | ) | |
| GLOBAL NOURISH, LLC and INNA TUMARIN, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Date Submitted: December 22, 2025
Date Decided: April 17, 2026

Rafael Zahralddin, LEWIS BRISBOIS BISGAARD & SMITH LLP, Wilmington, Delaware; Andrew R. Ralli, THE LAW OFFICES OF ANDREW RALLI, LLC, Wilmington, Delaware, *Attorneys for Plaintiff Birch Strategic Capital, LLC.*

Daniel C. Herr, LAW OFFICE OF DANIEL C. HERR LLC, Wilmington, Delaware, *Attorney for Defendants Global Nourish, LLC and Inna Tumarin.*

**ZURN, Vice Chancellor.**

One company sold itself to another company, and two types of disputes arose out of that transaction. Both sides raised business disputes arising out of the transaction. The purchase agreement contains an arbitration provision governing such disputes. The second type of dispute has a more personal component: after closing, the buyer's principals allegedly sexually harassed the seller's principal. Under a recently enacted federal statute, arbitration provisions can be unenforceable for sexual harassment cases.

The seller and its principal sued the buyer and its principals in California for both sexual harassment and transaction-related claims. The buyer has its own transaction-related claim, and came to this Court seeking a ruling that its claim must be arbitrated. The seller defendants resist arbitration, asserting the buyer's claim is a compulsory counterclaim in the sexual harassment case, so it cannot be arbitrated under the recently enacted federal statute. The seller defendants also contend this action should be stayed in deference to the first-filed California action.

As the purchase agreement included a forum selection clause sending transaction-related disputes to Delaware courts, principles of comity do not commend staying this action. The buyer's transaction-related claim is not part of the sexual harassment case, so it does not trigger the federal arbitration statute.

## I.    BACKGROUND[1]

The following facts were either uncontested or were proven by a preponderance of the evidence.  Trial was held on a paper record, including the parties' joint exhibits and the stipulated facts in the parties' Joint Pre-Trial Order.[2]

### A.    The Transaction

Defendant Inna Tumarin founded and owned defendant Global Nourish, LLC (together the "Defendants"), which sells skin care products.[3]  In February 2025, Tumarin agreed to sell Global Nourish to plaintiff Birch Strategic Capital, LLC ("Birch" or "Plaintiff"), which operates in the health and wellness space.[4]  The transaction agreements include an asset purchase agreement ("APA"), an employment agreement ("Employment Agreement"), and a membership unit option agreement ("MUOA," and collectively, the "Agreements").[5]

---

[1] Citations in the form "Compl. ¶ __" refer to the Verified Complaint, available at docket item ("D.I.") 1.  Citations in the form "Ans. ¶ __" refer to the defendants' answer to the Verified Complaint, available at D.I. 7.  Citations in the form "POB at __" refer to the plaintiff's corrected pre-trial opening brief, available at D.I. 23.  Citations in the form "DAB at __" refer to the defendants' pre-trial answering brief, available at D.I. 22.  Citations in the form "PRB at __" refer to the plaintiff's pre-trial reply brief, available at D.I. 24.  Citations in the form "Def. Supp. at __" refer to the defendants' supplement letter, available at D.I. 29.  Citations in the form "Pl. Supp. __" refer to the plaintiff's supplement letter, available at D.I. 30.  Citations in the form "Trial Tr. at __" refer to the trial transcript, available at D.I. 31.  Citations in the form "JX __" refer to the parties' joint exhibits.

[2] D.I. 27 [hereinafter "Joint Stip. at __"].

[3] Joint Stip. at 4.

[4] Compl. ¶ 13; Joint Stip. at 4; *see* JX 35 [hereinafter "CA Action"] ¶¶ 16–19.

[5] Joint Stip. at 1, 4–5.

Under the APA, Birch acquired Global Nourish's rights and title in certain enumerated "Purchased Assets," and in exchange, Tumarin received a 15% nonvoting stake in Birch.[6] Global Nourish represented it "own[ed] and h[e]ld[] good title to the Purchased Assets."[7] And Tumarin agreed to be bound by all terms and conditions of the APA, including Global Nourish's representations.[8] Birch acquired the Purchased Assets "free and clear of any liens, encumbrances or claims of any kind of character."[9]

The APA is governed by Delaware law and includes an arbitration provision (the "Arbitration Provision").[10] The Arbitration Provision states that:

> Any dispute or controversy arising under or in connection with this Agreement, including issues raised regarding the Agreement's formation, interpretation or breach, shall be settled exclusively by binding arbitration in Delaware. The arbitration shall provide for written discovery and depositions adequate to give the parties access to documents and witnesses that are essential to the dispute. The arbitrator shall issue a written decision that includes the essential findings and conclusions upon which the decision is based, which shall be signed and dated.[11]

---

[6] JX 1 [hereinafter the "APA"] §§ 1.01–1.02, Ex. A (enumerating a non-exclusive list of twelve categories of Global Nourish's assets that constitute the "Purchased Assets" under the APA).

[7] *Id*. § 3.01; *id*. at Recital I–VI (noting Global Nourish is wholly owned by Tumarin).

[8] *Id*. § 3.05 ("The Principal adopts, accepts, and agrees to be bound by all the terms and conditions of this Agreement."); *see id*. at Preamble (defining Global Nourish as "Seller" and Tumarin as "Principal").

[9] *Id*. § 1.01.

[10] *Id*. §§ 7.12–7.13.

[11] *Id*. § 7.12.

The APA also includes a forum selection clause providing that any "proceeding arising out of or based upon this [APA]" may be brought "in the federal courts of the United States of America or the courts of the State of Delaware."[12]

Tumarin and Birch executed the Employment Agreement contemporaneously with the APA.[13] Tumarin agreed to serve as Birch's "Founder and Chief Executive Officer," terminable at will after a ninety-day notice period.[14] The Employment Agreement sets forth certain metrics for Tumarin to hit.[15] It restricts Tumarin's use of Birch's confidential information, including removing that information from Birch's facilities.[16] And it mandates Tumarin return all Birch property immediately if she is terminated.[17] The Employment Agreement is governed by California law and includes an Orange County, California forum selection clause.[18]

---

[12] *Id*. § 7.16.

[13] *Id*. at Recital VI; Joint Stip. at 4; JX 2 [hereinafter the "Employment Agr."].

[14] Employment Agr. at Recital 2–3.

[15] *Id*. at Ex. B.

[16] *Id*. §§ 2(c), 8, Ex. A.

[17] *Id*. § 16.

[18] *Id*. § 20.21.

## B. The Parties' Relationship Deteriorates; Arbitration And Litigation Ensue.

Issues arose almost immediately. Tumarin alleges she was sexually harassed from her first day as CEO through October 2024 by Birch's founder Sergio Bechara and its Chief Operating Officer Basel Nizam.[19] Tumarin claims she reported Nizam's harassment to Bechara in October 2024.[20] On November 4, 2024, Birch gave Tumarin notice that her performance fell short of the APA's requirements.[21]

On January 29, 2025, Birch sent Global Nourish and Tumarin notice of an arbitration demand.[22] Birch asserted Defendants failed to convey all the Purchased Assets to Birch, with a focus on Global Nourish's website and web domain credentials (the "Purchased Assets Claim").[23] The notice invoked the APA's Arbitration Provision and stated Birch had chosen a Delaware attorney to serve as the arbitrator.[24]

---

[19] CA Action ¶¶ 2–4.

[20] *Id.* ¶¶ 2, 33–34.

[21] Joint Stip. at 5; *see* Employment Agr. § 2.

[22] JX 6; *see* APA §§ 1.01, 3.01, 7.12, 7.16.

[23] JX 6; *see* APA §§ 1.01, Ex. A.

[24] JX 6 at 2. Birch's arbitration notice appeared to invoke the Delaware Uniform Arbitration Act ("DUAA") in providing a twenty-day deadline for Defendants to object to the Arbitration Notice. *See* 10 *Del. C.* § 5703(c). The DUAA only applies where its application is expressly provided in the parties' agreement. 10 *Del. C.* § 5702(a); *see Astrum Fund I GP, LP v. Maracci*, 2022 WL 252343, at *5 (Del. Ch. Jan. 27, 2022). The APA does not expressly provide the Arbitration Provision is governed by DUAA. APA §

6

Global Nourish and Tumarin responded the same day.[25] They resisted arbitration, including on the grounds that Tumarin's sexual harassment claims "negate[] any purported arbitration provision" and vest California with jurisdiction.[26] They also sought to rescind the APA on the grounds that Tumarin never received her 15% stake in Birch, and asserted Tumarin was fraudulently induced to enter the APA because Birch concealed an ongoing control dispute regarding its ownership.[27]

Three business days later, Birch terminated Tumarin and requested she return its property, including a computer, cell phone, and web domain and credentials.[28]

Three days after she was fired, Tumarin sued Birch, Bechara, Nizam, and ten unnamed defendants in the Superior Court of the State of California in Orange County (the "California Action").[29] Counts I-VI claim sexual harassment,

---

7.12. At trial, Plaintiff conceded the DUAA is inapplicable as it is not mentioned in the Arbitration Provision. Trial Tr. at 15.

[25] JX 5.

[26] *Id*. at 4.

[27] *Id*. at 1–2.

[28] Joint Stip. at 6; Compl. ¶¶ 17–18.

[29] Joint Stip. at 6; *see generally* CA Action. The California Action is captioned *Inna Tumarin v. Birch Strategic Capital, LLC, Sergio Bechara, and Basel Nizam*, C.A. No. 30-2025-01458923. Joint Stip. at 6.

retaliation, wrongful termination, and emotional distress.[30] Tumarin claims the November 2024 notice of purported performance deficiencies was pretextual and retaliatory.[31]

The rest of Tumarin's counts extend to the parties' business dispute. Count VII alleges Birch, Bechara, and Nizam fraudulently induced Tumarin to enter the Agreements by concealing an ownership dispute pending when the Agreements were executed, and by representing that Birch would pay for Tumarin's mother's health insurance.[32] Tumarin alleges Bechara and Nizam induced her into entering the Agreements "so that they could collectively subject her to pervasive sexual harassment . . . which culminated in Defendants' termination of [] Tumarin's employment."[33] Count VIII claims Birch breached the Employment Agreement by pretextually putting her on a performance plan and terminating her, even though she performed her duties as required.[34] Count IX alleges Birch breached the implied covenant of good faith and fair dealing with respect to the Employment Agreement and MUOA.[35] Count X seeks declaratory relief in the form of an order

---

[30] CA Action ¶¶ 2–4, 22–74.

[31] *Id.* ¶¶ 16–21, 32–47.

[32] *Id.* ¶¶ 75–82.

[33] *Id.* ¶¶ 76.

[34] *Id.* ¶¶ 83–89.

[35] *Id.* ¶¶ 90–97.

rescinding the APA and restoring Tumarin's 100% ownership of Global Nourish.[36]

And Count XI alleges Birch, Bechara, and Nazim violated a California unfair business practices statute.[37]

Global Nourish and Tumarin continued to resist arbitration of Birch's Purchased Assets Claim. On February 18 they objected to the Arbitration Notice on the basis Birch unilaterally selected a Delaware attorney to serve as arbitrator and engaged in "*ex parte* communications" with that attorney.[38] Global Nourish and Tumarin specifically invoked the Ending Forced Arbitration Act (the "EFAA") and claimed it prohibited arbitration of the Purchased Assets Claim, on the basis it is a compulsory counterclaim in the California Action that presses Tumarin's sexual harassment claims.[39]

On March 3, Birch filed a petition in the United States District Court for the District of Delaware (the "District of Delaware Action") seeking to compel Global Nourish and Tumarin to arbitrate Birch's Purchased Assets Claim.[40] On June 10,

---

[36] *Id.* ¶¶ 98–100.

[37] *Id.* ¶¶ 101–104.

[38] JX 7 at 1.

[39] *Id.* at 2; *see* 9 U.S.C. §§ 400 *et seq*.

[40] Joint Stip. at 7; JX 63. The District of Delaware Action is captioned *Birch Strategic Capital, LLC v. Global Nourish, LLC and Inna Tumarin*, C.A. No. 25-mc-00104 (D. Del.). Joint Stip. at 7.

Birch was informed the District Count lacked subject matter jurisdiction and voluntarily dismissed that action.[41]

In the meantime, on May 16, Birch sought to litigate its Purchased Assets Claim.[42] It sued Tumarin in the United States District Court for the Central District of California for breaching the Employment Agreement and the Confidentiality Agreement and violating the Defend Trade Secrets Act (the "Trade Secret Action").[43] Birch alleged Tumarin failed to return Birch's confidential information after her termination, including Birch's website and social media credentials.[44] The complaint explicitly disclosed that Birch was seeking to compel arbitration of its APA claims in the District of Delaware Action.[45] Birch voluntarily dismissed the Trade Secret Action on July 28.[46]

On June 11, Birch turned back to arbitration, and sued in this Court to compel Defendants to arbitrate the Purchased Assets Claim.[47] Count I seeks a declaration that the Arbitration Provision is valid and enforceable, and that the

[41] Joint Stip. at 7.

[42] JX 76.

[43] Joint Stip. at 7–8; JX 76.

[44] JX 76 ¶¶ 2–3, 17–26.

[45] *Id*. ¶ 13 n.1.

[46] Joint Stip. at 8; JX 87. Defendants are not arguing Birch waived its right to seek arbitration based on the Trade Secrets Action. Trial Tr. at 27–28.

[47] Compl. ¶¶ 1, 8, 21–35; *see* Joint Stip. at 7 ("Plaintiff voluntarily dismissed [the District of Delaware] [A]ction one day before [ ] the filing of the Complaint in this Action.").

Purchased Assets Claim is subject to the Arbitration Provision; and Count II requests a mandatory injunction compelling Defendants to arbitrate the Purchased Assets Claim in Delaware.[48]

Birch moved for expedition, which Defendants did not oppose.[49] Defendants answered the Complaint and raised numerous affirmative defenses.[50] Trial was held on a paper record on December 16.[51] I requested supplemental briefing, which closed on December 22.[52]

## II.    ANALYSIS

Plaintiff seeks an order compelling Defendants to arbitrate Plaintiff's Purchased Assets Claim under the APA's Arbitration Provision.[53] Defendants do

---

[48] Compl. ¶¶ 21–35.

[49] D.I. 1 at Motion to Expedite; D.I. 12 at 2. Defendants removed this action to federal court but eventually consented to this Court's jurisdiction. D.I. 6; D.I. 8; D.I. 9; D.I. 10; JX 97.

[50] Defendants' Answer raised seven affirmative defenses: (i) the EFAA precludes Plaintiff's effort to compel arbitration; (ii) Plaintiff committed a first-in-time material breach of the APA; (iii) the APA was the product of fraud or forgery; (iv) laches; (v) waiver; (vi) unclean hands; and (vii) the lack of irreparable harm. Ans. at 11–12. Defendants' pretrial briefing only advanced arguments relating to the EFAA and waiver, so the remaining affirmative defenses are waived. *Emerald P'rs. v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999) ("Issues not briefed are deemed waived."). And at trial, Defendants withdrew any argument Plaintiff waived its right to compel arbitration based on the Trade Secret Action. Trial Tr. at 27–28; *see supra* n. 47.

[51] D.I. 28.

[52] Pl. Supp.; Def. Supp.

[53] Joint Stip. at 11.

11

not contest the Purchased Assets Claim is subject to the Arbitration Provision.[54]

Rather, they argue the EFAA prohibits arbitration of the Purchased Assets Claim.[55]

Defendants also argue Plaintiff cannot establish the Arbitration Provision is valid and enforceable because the California Action seeks an order rescinding the APA.[56] Finally, Defendants claim this action should be stayed in deference to the first-filed California Action under the *McWane* doctrine.[57]

As an issue of first impression in Delaware, this opinion concludes the EFAA's plain text does not prohibit arbitration of the Purchased Assets Claim. Defendants' recission-based argument fails because the California Action challenges the validity of the container agreement, the APA, not the Arbitration Provision. And *McWane* is inapplicable here given the APA's forum selection clause.

### A. The EFAA Does Not Preclude Arbitration Of The Purchased Assets Claim.

In 1925, Congress enacted the Federal Arbitration Act ("FAA") to place arbitration agreements "on equal footing with all other contracts."[58] The FAA established agreements to arbitrate "shall be valid, irrevocable, and enforceable" as

---

[54] *Id*. at 10–11.

[55] DAB at 10–17; Trial Tr. at 17–19.

[56] DAB at 10–12; Trial Tr. at 22–23; *see* CA Action ¶ 99.

[57] Trial Tr. at 24; DAB at 12 (citing *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng'g Co.*, 263 A.2d 281 (Del. 1970)).

any other contract."[59]   The Ending Forced Arbitration Act was enacted nearly 100 years later, on March 3, 2022, marking "the first major amendment in the history of the FAA."[60]   As summarized by the Second Circuit, "the EFAA renders arbitration agreements invalid and unenforceable, at the election of the complainant, in sexual assault and sexual harassment cases."[61]

The EFAA makes a pre-dispute arbitration agreement invalid and unenforceable "with respect to a case which is filed under Federal, Tribal, or State law and relates to the . . . sexual harassment dispute," at the election of the person who brought that dispute.[62]   Section 402(a) of the EFAA provides, in relevant part:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute . . . no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to *a case which* is filed under Federal, Tribal, or State law and *relates to the sexual assault dispute or the sexual harassment dispute*.[63]

---

[58] *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006).

[59] 9 U.S.C. § 2.

[60] *Olivieri v. Stifel, Nicolaus & Co., Inc.*, 112 F.4th 74, 84 (2d Cir. 2024);  9 U.S.C. § 400 *et seq.*; Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021, Pub. L. No. 117-90, § 3, 136 Stat. 26, 28 (2022); *see also* David Horton, *The Limits of the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act*, 132 Yale L.J. Forum 1, 1 (2022).

[61] *Olivieri*, 112 F.4th at 77.

[62] 9 U.S.C. § 402(b).

[63] *Id*. § 402(a) (emphasis added).

The EFAA further provides that its applicability and the "validity and enforceability of an arbitration agreement shall be determined by a court, rather than an arbitrator . . . irrespective of whether the party resisting arbitration challenges the arbitration agreement."[64]

Here, the question before the Court is whether Birch's Purchased Assets Claim is a "case which . . . relates to the . . . the sexual harassment dispute" brought in Tumarin's California Action.[65]  Defendants say it is; Plaintiff says it is not.[66]  Defendants do not assert that the Purchased Assets Claim relates to the sexual harassment dispute on a standalone basis.  Rather, they assert the California Action is a "case which . . . relates to the . . . the sexual harassment dispute"; that the Purchased Assets Claim is a compulsory counterclaim to Tumarin's APA claims in the California Action, and can only be brought in that action; and so the Purchased Assets Claim is part of that "case."[67]

The outcome depends on the meaning of "case" in Section 402(a) of the EFAA.[68]  That is an issue of first impression for Delaware courts.[69]  In the absence

---

[64] *Id*. § 402(b).

[65] *Id*. § 402(a).

[66] Trial Tr. at 6–9, 20–23.

[67] DAB at 1, 10–18; Trial Tr. 20–26.

[68] 9 U.S.C. § 402(a).

[69] Delaware courts have had three occasions to write on the EFAA.  *Shelley v. Barrett Bus. Servs., Inc.*, 2023 WL 2980457, at *3 n.26 (Del. Super. Apr. 13, 2023) (noting the EFAA did not apply because the claims at issue accrued before the EFAA was signed

of binding authority on the issue, this Court relies on principles of statutory interpretation, with the assistance of persuasive authority.[70]

The analysis begins with the plain language of the statute.[71] "The goal of statutory construction is to determine and give effect to legislative intent."[72] "[T]he words of the statute themselves are the first and most authoritative source of the meaning of its command."[73] "If the statute as a whole is unambiguous and there is no reasonable doubt as to the meaning of the words used, the court's role is limited to an application of the literal meaning of those words."[74] "Undefined

---

into law); *Woodruff v. Dollar Gen. Corp.*, 2022 WL 17752359, at *3–4 (D. Del. Dec. 19, 2022) (same); *Hicks v. CEC Ent. Hldgs. I, Inc.*, 2025 WL 1770787, at *3 (D. Del. June 26, 2025) (holding the reach of the EFAA is not limited to "victims," but instead gives rights to "person[s] alleging conduct constituting" "a dispute relating to conduct that is alleged to constitute sexual harassment." (quoting 9 U.S.C. §§ 401(4), 402(a))). The Third Circuit has interpreted the statute on one occasion but had no cause to address the question before this Court. *Cornelius v. CVS Pharm. Inc.*, 133 F.4th 240, 245–50 (3d Cir. 2025) (addressing the accrual of claims under the EFAA), *cert. denied*, 146 S. Ct. 193 (2025).

[70] *See Ploof v. State*, 856 A.2d 539, 546 (Del. 2004); *Kofron v. Amoco Chems. Corp.*, 441 A.2d 226, 230 (Del. 1982); *Stoltz v. Wilm. Tr. Co.*, 1992 WL 127516, at *5 (Del. Ch. June 9, 1992).

[71] *Zhurbin v. State*, 104 A.3d 108, 110 (Del. 2014); *Spielberg v. State*, 558 A.2d 291, 293 (Del. 1989) ("In the construction of a statute, this Court has established as its standard the search for legislative intent. Where the intent of the legislature is clearly reflected by unambiguous language in the statute, the language itself controls." (internal citation omitted)).

[72] *Del. Bd. of Nursing v. Gillespie*, 41 A.3d 423, 427 (Del. 2012) (quoting *LeVan v. Indep. Mall, Inc.,* 940 A.2d 929, 932 (Del. 2007)).

[73] *Stoltz*, 1992 WL 127516, at *5.

[74] *In re Adoption of Swanson*, 623 A.2d 1095, 1096–97 (Del. 1993) (citing *Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.*, 492 A.2d 1242, 1246 (Del. 1985)).

15

words in a statute must be given their ordinary, common meaning."[75]  When facing

a novel question of statutory construction, this Court is to "give the statutory words

their commonly understood meanings."[76]  Thus, "[w]here the language is plain and

admits of no more than one meaning, the duty of interpretation does not arise, and

the rules which are to aid doubtful meanings need no discussion."[77]  "If a statute is

unambiguous, there is no need for judicial interpretation, and the plain meaning of

the statutory language controls."[78]  A statute is only rendered ambiguous if it is

susceptible of two reasonable interpretations, or "if a literal reading of the statute

would lead to an unreasonable or absurd result not contemplated by the

legislature."[79]  "The fact that the parties disagree about the meaning of the statute

does not create ambiguity."[80]

The word "case" in Section 402 is unambiguous.  The statute does not define

"case," so I turn to the dictionary.[81]  Black's Law Dictionary defines "case" as "[a]

---

[75] *Oceanport Indus., Inc. v. Wilm. Stevedores, Inc.*, 636 A.2d 892, 900 (Del. 1994).

[76] *Kofron*, 441 A.2d at 230.

[77] *Friends of H. Fletcher Brown Mansion v. City of Wilm.*, 34 A.3d 1055, 1059 (Del. 2011) (alteration in original) (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)).

[78] *Dir. of Revenue v. CNA Hldgs., Inc.*, 818 A.2d 953, 957 (Del. 2003) (quoting *Eliason v. Englehart*, 733 A.2d 944, 946 (Del. 1999)).

[79] *Dir. of Revenue*, 818 A.2d at 957 (quoting *Newtowne Vill. Serv. Corp. v. Newtowne Road Dev. Co., Inc.*, 772 A.2d 172, 175 (Del. 2001)).

[80] *Chase Alexa, LLC v. Kent Cnty. Levy Ct.*, 991 A.2d 1148, 1151 (Del. 2010).

[81] *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 738 (Del. 2006) ("Under well-settled case law, Delaware courts look to dictionaries for assistance in determining

16

civil or criminal proceeding, action, suit, or controversy at law or in equity."[82]

That plain meaning refers to a legal proceeding as an undivided and exclusive whole.[83]  Indeed, Section 402 modifies "case" as "a case which is filed," which is consistent with a proceeding, action, or suit.[84]  The text of the statute itself "keys the scope of the invalidation of the arbitration clause to the entire 'case' relating to the sexual harassment dispute."[85]

The EFAA's use of the term "case" to mean a proceeding as filed is consistent with the term's use in the FAA, which the EFAA amends.[86]  Section 7

---

the plain meaning of terms which are not defined . . . ."); *see Cornelius*, 133 F.4th at 246 (relying on dictionaries to determine the plain meaning of "dispute" under the EFAA).

[82] *Case*, Black's Law Dictionary (12th ed. 2024); *see, e.g., Bruce v. Adams & Reese, LLP,* 168 F.4th 367, 382 (6th Cir. 2026) (relying on dictionaries to define "case" in construing Section 402(a)); *Johnson v. Everyrealm, Inc.*, 657 F. Supp. 3d 535, 558–59 (S.D.N.Y. 2023) (same).

[83] *E.g., Johnson*, 657 F. Supp. 3d at 559; *Sheehan v. Everstory P'rs*, 804 F. Supp. 3d 498, 516 (E.D. Pa. 2025) (concluding the term "case" in Section 402(a) "captures the legal proceeding as an undivided whole.").

[84] 9 U.S.C. § 402(a); *see also Chavez v. Martinez*, 538 U.S. 760, 766, (2003) ("The words 'case' and 'cause' are constantly used as synonyms in statutes and judicial decisions, each meaning *a proceeding in court, a suit, or action.*" (emphasis in original) (quoting *Blyew v. United States*, 80 U.S. 581, 595 (1872))); *see also Brownback v. King*, 592 U.S. 209, 220 (2021) (Sotomayor, J., concurring) (distinguishing the terms "action" and "claim").

[85] *Johnson*, 657 F. Supp. 3d at 558.

[86] *See Bruce*, 168 F.4th at 382 (noting one "need look no further than the FAA to find a use of the word 'case' in accordance with these [dictionary] definitions"); *see also SimmsParris v. Countrywide Fin. Corp.*, 652 F. 3d 355, 358 (3d Cir. 2011) ("In examining a particular provision of a statute, it is important to interpret it in the context of the full statutory scheme." (citing *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371 (1988))); *see also Gross v. FBL Fin. Servs., Inc.*, 557

17

of the FAA provides for the ability to call witnesses "in [a] case" in arbitration.[87]

That use of the term "case" describes a proceeding.

Defining "case" as a judicial proceeding is reinforced by the EFAA's contrasting use of the term "claim." The EFAA sets the effective date utilizing the narrower term "claim."[88] A "claim" is "a right to something," or "the assertion of an existing right; any right to payment or to an equitable remedy."[89] A "case" or judicial proceeding contains one or more "claims."[90]

As for persuasive authority, sister courts have decisively concluded that Section 402(a)'s use of "case" refers to a judicial proceeding filed in court.[91]

---

U.S. 167, 174 (2009) ("When Congress amends one statutory provision but not another, it is presumed to have acted intentionally.").

[87] 9 U.S.C. § 7.

[88] Pub. L. No. 117-90, § 3, 136 Stat. 26, 28 (2022) ("This Act, and the amendments made by this Act, shall *apply with respect to any dispute or claim* that arises or accrues on or after the date of enactment of this Act." (emphasis added)). "This language is contained in a 'statutory note' and is not reflected in the published version of the U.S. Code. Statutory notes are congressionally enacted and constitute binding law." *Cornelius*, 133 F.4th at 246 n.8 (citing *Olivieri*, 112 F.4th at 84 n.4 ("It makes no legal difference that this provision is codified in a statutory note, not the main body, of the United States Code.")).

[89] *Claim*, Merriam Webster, https://www.merriam-webster.com/dictionary/claim (last visited April 16, 2026); *Claim*, Black's Law Dictionary (12th ed. 2024).

[90] *See Bruce*, 168 F.4th at 382 (explaining "'claims' are the component parts of a 'suit,' 'case,' or 'action,' each of which [ ] encompasses the entirety of a civil proceeding").

[91] *E.g., Johnson*, 657 F. Supp. 3d at 558 ("This text is clear, unambiguous, and decisive as to the issue here. It keys the scope of the invalidation of the arbitration clause to the entire 'case' relating to the sexual harassment dispute. It thus does not limit the invalidation to the claim or claims in which that dispute plays a part."); *Bruce*, 168 F.4th at 382 ("The operative word here is 'case.' That is because it is 'with respect to a case' that an otherwise-valid arbitration agreement is invalid and unenforceable."); *Lambert v.*

Courts have reached that conclusion in the context of determining that where one claim within a case triggers the EFAA, the party claiming sexual harassment can render the arbitration clause unenforceable as to the entire case.[92]

---

*New Start Cap. LLC*, 799 F. Supp. 3d 258, 284 (S.D.N.Y. 2025) ("[T]he EFAA applies only to the case of the individual plaintiff . . . alleging conduct constituting a sexual harassment dispute or sexual assault dispute."), *appeal withdrawn*, 2026 WL 654284 (2d Cir. Feb. 27, 2026); *Doe v. Second St. Corp.*, 326 Cal. Rptr. 3d 42, 60 (Cal. Ct. App. 2024) ("[A]lthough not all of plaintiff's causes of action arise out of her sexual harassment allegations, the 'case' unquestionably 'relates to' the sexual harassment dispute because all of the causes of action are asserted by the same plaintiff, against the same defendants, and arise out of plaintiff's employment by the hotel."); *Liu v. Miniso Depot CA, Inc.*, 326 Cal. Rptr. 3d 286, 291 (Cal. App. 2024) ("Under the EFAA, when a plaintiff's lawsuit contains at least one claim that fits within the scope of the act, the arbitration agreement is unenforceable as to all claims asserted in the lawsuit."), *review denied* (Dec. 31, 2024), *cert. denied*, 146 S. Ct. 107 (2025); *Bruce v. Adams & Reese*, 2025 WL 611071, at *14 (M.D. Tenn. Feb. 25, 2025) ("[T]he district courts interpreting the EFAA so far . . . have concluded, based upon the statute's use of the term 'case,' that the EFAA precludes arbitration of the entire case, so long as the complaint includes a plausible sexual harassment/assault claim."), *aff'd*, 168 F.4th 367 (6th Cir. 2026) ("[T]he EFAA's text renders an arbitration agreement '[un]enforceable with respect to' a plaintiff's entire case, or action, and not only with respect to certain claims therein." (second alteration in original) (quoting 9 U.S.C. § 402(b))); *Bray v. Rhythm Mgmt. Grp., LLC*, 2024 WL 4278989, at *8 (D. Md. Sept. 24, 2024) ("[T]he Court finds that the language of the EFAA establishes that Congress intended to bar enforcement of an arbitration clause over all claims within a civil action when the case in some way 'relates to' a sexual harassment dispute." (quoting 9 U.S.C. § 402(b))).

[92] *E.g.*, *McDermott v. Guaranteed Rate, Inc.*, 352 A.3d 1, 17 (N.J. Super. Ct. App. Div. 2025) ("[T]he the plain and unambiguous language of the EFAA, [] invalidates pre-dispute arbitration agreements with respect to an entire 'case' relating to sexual harassment or assault, rather than only to discrete claims. Congress deliberately used the broader term 'case,' and courts interpreting the EFAA have widely agreed that its protection applies to all claims within such an action."); *id.* at 18 (looking to Black's Law Dictionary's definition of "case" and concluding, "Giving 'case' its ordinary meaning, [] the EFAA's text is clear that its invalidation of an arbitration agreement extends to the entire case relating to the sexual harassment dispute, not solely to the individual claims within the case that may be related to sexual harassment."); *Molchanoff v. SOLV Energy, LLC*, 2024 WL 899384, at *5 (S.D. Cal. Mar. 1, 2024) ("[B]ecause Plaintiff's 2022 retaliation claim alleges conduct constituting a sexual harassment dispute . . . , and

With the ordinary meaning of 'case' in mind, the text of § 402(a) makes clear that its invalidation of an arbitration agreement extends to the entirety of the case relating to the sexual harassment dispute, not merely the discrete claims in that case that themselves either allege such harassment or relate to a sexual harassment dispute.[93]

Plain meaning and persuasive authority teach that the EFAA operates at the unit level of a "case which is filed," meaning a legal proceeding as filed. Here, the question is whether the unit of a "case"—the proceeding as a whole—includes claims that are not part of that case, but perhaps could be or should be. Defendants

---

because the case as a whole relates to that dispute, the EFAA bars enforcement of the arbitration agreement between Plaintiff and [employer] as to all claims in this case[.]"); *Holsten v. Barclays Servs. LLC*, 2025 WL 2696991, at *14–15 (E.D. Va. 2025); *Sheehan,* 804 F. Supp. 3d at 515–18 (finding the complaint plausibly alleged a sexual harassment claim and concluding "Plaintiffs have properly invoked the EFAA in this case and that Plaintiffs' Arbitration Agreements are thus invalid and unenforceable with respect to the entire case"); *Delo v. Paul Taylor Dance Found., Inc.*, 685 F. Supp. 3d 173, 183 (S.D.N.Y. 2023) ("[W]here a dispute presents multiple claims—some related to sexual harassment, others not—the EFAA blocks arbitration of the entire case, not just the sexual harassment claims."); *Puris v. TikTok Inc.*, 2025 WL 343905, at *6 (S.D.N.Y. Jan. 30, 2025) ("The EFAA states that an arbitration agreement is unenforceable with respect to 'a case' which relates to the sexual harassment dispute. It does not say that such an agreement is unenforceable with respect to a 'claim' of sexual harassment." (internal citation omitted)); *Diaz-Roa v. Hermes Law, P.C.*, 757 F. Supp. 3d 498, 532 (S.D.N.Y. 2024) ("[I]f the EFAA is properly invoked and applies, the pre-arbitration agreement is invalid and unenforceable with respect to the entire case . . . Congress knows how to use the narrower term 'claim' when it so intends." (internal citations omitted)); *Kelly v. Rosenberg & Estis, P.C.*, 2025 WL 2709157, at *4 (S.D.N.Y. Sept. 23, 2025) ("[Plaintiff] plausibly states a sexual harassment claim. . . . The EFAA thus applies to bar enforcement of the arbitration agreement as to the entirety of this case." (internal citation omitted)).

[93] *Johnson*, 657 F. Supp. 3d at 559; *see Sheehan*, 804 F. Supp. 3d at 516 (noting many district courts have agreed with *Johnson*'s construction of the term "case"); *Malkani v. Gartner, Inc.*, 2026 WL 893217, at *8 (D. Conn. Mar. 31, 2026) (noting *Johnson*'s holding has been widely adopted by the Second Circuit and nationally).

seek to stretch the EFAA's application beyond that unit of a "case" to include claims that are not part of that case, but rather are "logically connected" to it as potential compulsory counterclaims.[94]

Defendants' approach is contrary to the plain meaning of "case."[95] A judicial proceeding as filed does not include claims filed elsewhere.[96] It also introduces uncertainty that the clear unit of a "case" avoids.[97] Under Defendants' broader and more nebulous application, the existence of a sexual harassment case would jeopardize any presumptively valid arbitration agreement between the parties for any claim, regardless of whether that claim is part of the sexual harassment proceeding. Defendant's theory would also inspire ancillary disputes—like this one—over whether claims in other cases are arbitrable.

---

[94] DAB at 17.

[95] *E.g.*, *P.C. v. Driscoll*, 2026 WL 699896, at *10 (D.N.J. Mar. 12, 2026) (noting the "ordinary meaning of 'case' . . . refers to an 'undivided whole'" finding the complaint "explicitly include[s] allegations of sexual harassment" and concluding "in accordance with the statutory text of the EFAA, this is 'a case which is filed under Federal, Tribal, or State law and *relates* to the sexual assault dispute or the sexual harassment dispute.'" (emphasis in original and internal citation omitted) (quoting 9 U.S.C. § 402(a))).

[96] *Bruce*, 168 F.4th at 382 ("'[C]laims' are the component parts of a 'suit,' 'case,' or 'action,' each of which [ ] encompasses the entirety of a civil proceeding.").

[97] *See Johnson*, 657 F. Supp. 3d at 560 ("The reading of the EFAA that lends coherence to the use of these separate terms assigns distinct meanings to "case" and "claim," with the former referring to the entirety of the lawsuit in which claim(s) implicating a sexual harassment dispute are brought.").

Tumarin's California Action is the "case" under the EFAA. It does not include Birch's Purchased Assets Claim.[98] Defendants assert the Purchased Assets Claim is a compulsory counterclaim in the California Action that simply has not yet been filed there.[99] Because the term "case" refers to a judicial proceeding, as filed and as an undivided whole, it does not include a claim that is not filed in that proceeding.[100] The Purchased Assets Claim has not been filed in the California Action. It is not part of that "case" for purposes of the EFAA.

Persuasive authority supports this conclusion. The Southern District of New York held that claims that have not been filed within a "case" or action are not part of that "case" for purposes of the EFAA.[101] In *Owens v. PricewaterhouseCoopers*, the employee sued the employer, bringing claims of sexual harassment, discrimination, and retaliation.[102] Then the employer initiated an arbitration proceeding (the "AAA Action"), claiming the employee breached the partnership agreement by engaging in impermissible competition and client

---

[98] *See generally* CA Action.

[99] Trial Tr. at 17–20; DAB at 14–19.

[100] *Johnson*, 657 F. Supp. 3d. at 558–60; *Owens v. PricewaterhouseCoopers LLC*, 786 F. Supp. 3d 831, 853 (S.D.N.Y. 2025) (finding unasserted claims "not a part of this case, and [were] therefore not covered by the EFAA").

[101] *Owens*, 786 F. Supp. 3d at 852–56. Neither Defendants here, nor the party trying the same argument in *Owens*, raised any authority in support of their "contention that claims not raised in a case are still part of the case." Id. at 853 n.9.

[102] *Id*. at 837–40.

solicitation (the "AAA Claims").[103]  The employee moved to stay the arbitration under the EFAA, arguing the employer's AAA Claims were compulsory counterclaims in the employee's action.[104]

*Owens* reasoned the plain meaning of "a case which is filed" is a "suit or controversy, not a claim."[105]  From there, *Owens* concluded,

> [T]he text of the EFAA does not support the view that at the election of the party making a sexual harassment allegation, a pre-dispute arbitration agreement is unenforceable with respect to all *claims* related to the sexual harassment dispute, regardless of whether the claims are actually raised in a pending lawsuit.[106]

The Court held "[t]he EFAA does not command a stay of the AAA Action because the AAA Claims are not a part of [the employee]'s case."[107]  *Owens* rejected the employee's compulsory counterclaim argument:  "the AAA claims have not been raised in this case, are therefore not a part of this case, and are therefore not covered by the EFAA."[108]

---

[103] *Id*. at 840.

[104] *Id*. at 854.

[105] *Id*. at 852–54.

[106] *Id*. at 853.

[107] *Id*. at 852 ("Multiple courts in the Southern District have analyzed the EFAA and determined that the 'clear, unambiguous, and decisive' meaning of the statute is that an arbitration clause is invalid with respect to the plaintiff's entire case, not to individual claims." (quoting *Johnson* 657 F. Supp. 3d at 558)); *see also Diaz-Roa*, 757 F. Supp. 3d at 532.

[108] *Owens,* 786 F. Supp. 3d. at 853.

So too here. Birch's Purchased Assets Claim is not part of the California Action. Even if the California Action is a "case" triggering the EFAA, the Purchased Assets Claim is not part of that "case." The EFAA does not preclude arbitration of the Purchased Assets Claim.

### B. The California Action Does Not Present Any Argument The Arbitration Provision Is Invalid.

Next, Defendants tilt at the enforceability of the Arbitration Provision.[109] They point to their allegations in the California Action that the APA was rescinded in January 2025.[110] The California Action also seeks rescission as a remedy for fraudulent inducement of the APA and the MOUA, in view of Tumarin's alleged failure to receive consideration under the APA.[111] The California Action is insufficient to put the Arbitration Provision's validity in doubt.

---

[109] I address this argument for completeness, even though it is unclear it was preserved. In the Joint Stip., Defendants' defenses were limited to the following: "(i) the Arbitration Provision in the APA is unenforceable under the EFAA because the claims part of the Sexual Harassment Action are sufficiently related to this Action; (ii) the claims Plaintiff desires to arbitrate are compulsory counterclaims to the Sexual Harassment Action as they are part of the same 'case'; and (iii) waiver by virtue of Plaintiff pursing claims and a temporary restraining order in the United States District Court for the District of California Central, Southern Division of Santa Ana." Joint Stip. at 10–11. Birch fairly complained that Defendants agreed "the APA and Arbitration Agreement's validity and enforceability outside the EFAA is not an issue before the Court." PRB at 4; *see* JX 32; *but see* Trial Tr. at 24.

[110] DAB at 5, 10–13; CA Action ¶¶ 20–21, 99; JX 5 ("[M]y client hereby rescinds the Asset Purchase Agreement rendering it void. (Cal. Civ. Code, § 1691.).").

[111] CA Action ¶¶ 20–21, 99–100; JX 5; *see, e.g.*, *Taguinod v. World Sav. Bank, FSB*, 755 F. Supp. 2d 1064, 1072 (C.D. Cal. 2010) ("Rescission is a remedy, not a cause of action." (citing Cal. Civ. Code, § 1691(b))).

The Supreme Court of the United States has directed courts to treat the agreement to arbitrate found within a larger contract as a severable, mini-agreement whose enforceability rises and falls separately from the larger agreement, which is known as the container contract.[112]  In Delaware, a party challenging the validity of an arbitration agreement must do so specifically, and an attack on the container agreement is insufficient.[113]

Tumarin's fraudulent inducement claim attacks the APA, not the Arbitration Provision within it.[114]  Tumarin's complaint in the California Action does not mention the Arbitration Provision, let alone claim she was fraudulently induced to execute that "mini-agreement" to arbitration.[115]  Defendants have launched no cognizable attack on the validity of the Arbitration Provision.

---

[112] *Fairstead Cap. Mgmt. LLC v. Blodgett*, 288 A.3d 729, 735 n.1 (Del. Ch. 2023) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967)).

[113] *Fairstead*, 288 A.3d at 752; *see also MZM Constr. Co., Inc. v. New Jersey Bldg. Lab. Statewide Benefit Funds*, 974 F. 3d 386, 397 (3d Cir. 2020).

[114] CA Action ¶¶ 76–82.

[115] When asked if the fraudulent inducement claim in California Action attacked the APA or the Arbitration Provision, Defendants' counsel responded it "attack[s] the entire

## C. Defendants' *McWane* Arguments Fail.

Defendants' final argument against an order compelling arbitration is that this action should be stayed in deference to the first-filed California Action, under the *McWane* doctrine.[116]

The *McWane* doctrine reflects the general rule that "'litigation should be confined to the forum in which it is first commenced, and a defendant should not be permitted to defeat the plaintiff's choice of forum in a pending suit by commencing litigation involving the same cause of action in another jurisdiction of its own choosing.'"[117] That doctrine is inapplicable when a forum selection clause requires the second-filed action to be litigated where it was filed.[118] "[W]here contracting parties have expressly agreed upon a legally enforceable forum selection clause, a court should honor the parties' contract and enforce the clause, even if, absent any forum selection clause, the *McWane* principle might otherwise require a different result."[119]

---

agreement. . . ." Trial Tr. at 25; Def. Supp. at 2 ("Here, Ms. Tumarin does challenge the formation of the Agreement that houses the arbitration provision.").

[116] DAB at 12–13, 19; Trial Tr. at 24–27.

[117] *Utilipath, LLC v. Hayes*, 2015 WL 1744163, at \*3 (Del. Ch. Apr. 15, 2015) (quoting *Transamerica Corp. v. Reliance Ins. Co. of Ill.,* 1995 WL 1312656, at \*4 (Del. Super. Aug. 30, 1995)).

[118] *Ingres Corp. v. CA, Inc.*, 8 A.3d 1143, 1145 (Del. 2010) ("The reason is that the *McWane* principle is a default rule of common law, which the parties to the litigation are free to displace by a valid contractual agreement.").

[119] *Id.* at 1146.

The APA provides a partially exclusive forum selection clause, which restricts the parties to a limited number of fora to file suit.[120] It states:

> Any legal suit, action or proceeding arising out of or based upon this Agreement or the transactions contemplated hereby may be instituted in the federal courts of the United States of America or the courts of the State of Delaware, and each party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action or proceeding.[121]

This language clearly and unambiguously reflects the parties' agreement that, if a lawsuit were to arise out of the APA, jurisdiction and venue may lie here. That provision applies to Birch's claim seeking to compel arbitration under Section 7.12 of the APA. That provision defeats Defendants' arguments under *McWane*.[122]

### D. Birch Is Entitled To A Declaratory Judgment, But Not An Injunction.

For the foregoing reasons, Birch is entitled to a declaratory judgment that the Arbitration Provision is valid and enforceable.

Birch also requests an order declaring that the Purchased Assets Claim "falls within Section 7.12."[123] That is a question of substantive arbitrability.[124] The

---

[120] APA § 7.16; *MICH II Hldgs. LLC v. Schron*, 2012 WL 2499507, at *4 (Del. Ch. June 29, 2012) ("[A]lthough there are competing actions proceeding in Delaware and New York, none of those actions violates or is inconsistent with the forum selection clauses. Thus, this Court must look to its default rules under *McWane*.").

[121] APA § 7.16.

[122] Neither the Defendants nor Plaintiff raised a *forum non conveniens* argument. *See GXP Cap., LLC v. Argonaut Mfg. Servs., Inc.*, 253 A.3d 93, 100–01 (Del. 2021).

[123] Compl. ¶ 23.

27

Court must first resolve whether this Court or an arbitrator should decide substantive arbitrability.[125] Substantive arbitrability is "an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise."[126] In *James & Jackson, LLC v. Willie Gary, LLC*, the Delaware Supreme Court held substantive arbitrability will only be submitted to an arbitrator where "the arbitration clause generally provides for arbitration of all disputes and also incorporates a set of arbitration rules that empower arbitrators to decide arbitrability."[127]

The Arbitration Provision does not speak to substantive arbitrability, and "does not reference any rules empowering an arbitrator to decide arbitrability."[128] It provides some procedural rules, but does not incorporate a set of rules governing

---

[124] *Legend Nat. Gas II Hldgs., LP v. Hargis*, 2012 WL 4481303, at *4 (Del. Ch. Sept. 28, 2012) ("Substantive arbitrability involves, among other things, the applicability of an arbitration clause, the scope of an arbitration provision, and whether an arbitration clause is valid and enforceable.").

[125] *Julian v. Julian*, 2009 WL 2937121, at *5 (Del. Ch. Sept. 9, 2009) ("Before determining substantive arbitrability, however, courts must address a threshold question that involves the second-order issue of who should decide whether the parties decided in the contract to submit a particular dispute to arbitration or to a court.") (cleaned up).

[126] *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 79 (Del. 2006); *Viacom Int'l, Inc. v. Winshall*, 72 A.3d 78, 82 (Del. 2013) ("Issues of substantive arbitrability are gateway questions relating to the scope of an arbitration provision and its applicability to a given dispute, and are presumptively decided by the court.").

[127] *Willie Gary*, 906 A.2d at 80.

[128] *See Donofrio v. Peninsula Healthcare Servs., LLC*, 2022 WL 1054969, at *3 (Del. Super. Apr. 8, 2022) (finding an arbitration agreement generally providing the "FAA governs" failed the second prong of *Willie Gary*).

the determination of substantive arbitrability.[129]  The Arbitration Provision does not evidence a clear and unmistakable agreement to delegate arbitrability to an arbitrator.[130]  So this Court is responsible for answering questions of substantive arbitrability.[131]

Under *Parfi Holding AB v. Mirror Image Internet, Inc.*, this Court must engage in a two-part inquiry to determine whether Birch's Purchased Assets Claim is subject to the Arbitration Provision.[132]  "First, the court must determine whether the arbitration clause is broad or narrow in scope.  Second, the court must apply the relevant scope of the provision to the asserted legal claim to determine whether the claim falls within the scope of the contractual provisions that require arbitration."[133]

The Arbitration Provision is broad in scope.  By agreeing to submit to arbitration "[a]ny dispute or controversy arising under or in connection with this [APA]" the parties signaled their intention to arbitrate all possible claims

---

[129] APA § 7.12 ("The arbitration shall provide for written discovery and depositions adequate to give the parties access to documents and witnesses that are essential to the dispute. The arbitrator shall issue a written decision that includes the essential findings and conclusions upon which the decision is based, which shall be signed and dated.").

[130] *Willie Gary*, 906 A.2d at 80.

[131] *Id.* at 81; *see Medicis Pharm. Corp. v. Anacor Pharms., Inc.*, 2013 WL 4509652, at *3 (Del. Ch. Aug. 12, 2013); *Donofrio*, 2022 WL 1054969, at *4.

[132] 817 A.2d 149, 155 (Del. 2002).

[133] *Id.*

implicating rights or obligations set forth in the APA.[134]  Similar arbitration clauses have satisfied *Parfi*'s first prong.[135]

The next step is to determine whether Birch's Purchased Assets Claim falls within that broad scope.[136]  *Parfi*'s second prong "must turn on" whether the claims at issue would be assertable absent an agreement among the parties.[137] Birch's Purchased Assets Claim alleges Defendants refused to properly transfer ownership of the Purchased Assets.[138]  It is a claim for breach of the APA, specifically Defendants' promise to transfer the Purchased Assets.[139]  That claim is

---

[134] APA § 7.12; *Elf Atochem N. Am. v. Jaffari Inc.*, 727 A.2d 286, 295 (Del. 1999) (holding that "in connection with" creates an obligation to submit claims related to the agreement to arbitration); *Li v. Standard Fiber, LLC*, 2013 WL 1286202, at *6 (Del. Ch. Mar. 28, 2013) (holding that an arbitration provision providing that "any claim or controversy arising out of or relating to this agreement, or the breach thereof shall be settled by arbitration" contained broad language and generally referred all disputes to arbitration (internal quotation marks omitted)).

[135] *Parfi*, 817 A.2d at 155 (holding an arbitration provision submitting to arbitration "any dispute, controversy, or claim arising out of or in connection with" the agreement was broad); *see Medtronic Vascular, Inc. v. NanoMedSystems, Inc.*, 2014 WL 795077, at *1– *2 (Del. Ch. Jan. 27, 2014) (finding a provision providing that "all disputes, claims, or controversies arising out of the Merger Agreement, except for those related to Intellectual Property" satisfied *Parfi*'s first prong); *Donofrio*, 2022 WL 1054969, at *3 (Del. Super. Ct. Apr. 8, 2022) (finding a provision directing "any dispute, disagreement, controversy, demand, or claim" satisfied *Parfi*'s first prong);  *see also Orix LF, LP v. Inscap Asset Mgmt., LLC*, 2010 WL 1463404, at *7 (Del. Ch. Apr. 13, 2010) ("Delaware courts have found the use of both 'arising out of' and 'relating to' language in an arbitration provision to be a broad mandate.").

[136] *Parfi*, 817 A.2d at 155.

[137] *Id.* at 157 (finding the plaintiff's claims "would be independently and separately assertable in that situation and are therefore not 'in connection with' the Agreement.").

[138] Compl. ¶¶ 14–20.

[139] APA §§ 1.01, 3.01, 7.12, 7.17, Ex. A.

only assertable based on the APA. It is governed by the Arbitration Provision; both sides agree on that.[140] Birch is entitled to the declaratory judgment it seeks in Count I.

As for Birch's request for a mandatory injunction compelling arbitration, styled as Count II, I presume Defendants will comport themselves consistently with the declaratory judgment and this opinion. An order from this Court declaring the EFAA does not apply to bar arbitration of Birch's Purchased Assets claim, coupled with a declaration the Arbitration Provision is valid and enforceable, "changes the incentives of the parties to the contract."[141] The parties are bound by this Court's declaratory judgment, and the Court expects compliance.[142] Equity need not, and therefore should not, provide a redundant remedy.

## III. CONCLUSION

Judgment is in entered in Birch's favor on Count I. Judgment is entered in Defendants' favor on Count II. The parties shall submit an implementing order.

---

[140] Joint Stip. at 10–11.

[141] *Athene Life & Annuity Co. v. Am. Gen. Life Ins. Co.*, 2019 WL 3451376, at *8 (Del. Ch. July 31, 2019).

[142] The Complaint includes a request for attorneys' fees and costs. Compl. at Prayer (b)–(d). This request is expressly barred by the APA. APA § 7.11 ("All Parties to this Agreement agree that they will bear their own attorneys' fees, costs and all other expenses incurred in connection with the disputes of this Agreement."). And Plaintiff abandoned this request during litigation. *Emerald P'rs*, 726 A.2d at 1224 ("Issues not briefed are deemed waived.").